109 N.J. Super. 83 (1969)
262 A.2d 409
PAUL J. SALVATORE, PLAINTIFF-APPELLANT,
v.
HARRY W. TRACE AND ETHEL Z. TRACE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 9, 1969.
Decided August 27, 1969.
*85 Before Judges GOLDMANN, KOLOVSKY and CARTON.
Mr. Edward J. Brady argued the cause for appellant.
Mr. James J. Casby, Jr. argued the cause for respondents (Mr. Vincent L. Gallaher, attorney).
*86 The opinion of the court was delivered by CARTON, J.A.D.
Plaintiff-buyer brought this action against defendants for specific performance of a realty contract. In the alternative, he sought damages for breach of the contract of sale. After a trial without a jury, the court dismissed his action and granted defendants' counterclaim for rescission of the contract. Plaintiff appeals.
Defendants, the owners of certain lands in Gloucester Township, entered into a written contract on August 30, 1967 to sell to plaintiff a portion of those lands, designated in the contract as Lots 13 to 19, inclusive, on a certain map, and
[i]n addition a piece of ground of at least 25 foot frontage on Oak Avenue being part of the premises owned and occupied by the Sellers. The depth to be at least the minimum requirement by the Burough [sic] or Township ordinances * * *.
The agreed price was $3500 of which $25 was paid as a downpayment, with the balance payable at the time of settlement. The contract provided that "Settlement shall be made on or before the 8th day of December A.D. 1967, said time to be of the essence of this Agreement, unless extended by mutual consent in writing endorsed hereon."
By the terms of the contract, the sellers were obliged to convey the property free and clear of all liens, encumbrances and easements (with certain specific exceptions not here pertinent). The contract further provided that "the title to the herein described lot or piece of ground shall be good and marketable or such as will be insured by any reputable Title Insurance Company in the City of Philadelphia, or the adjacent counties, at the regular rates."
The numbered lots fronted on Huntington Street, and part of the rear of the property abutted Oak Avenue, both of which were paper streets shown on the map. The provision relating to the additional 25 feet was apparently included in the agreement for the purpose of providing the purchaser with additional access to Oak Avenue.
*87 The contract made no reference to any subdivision approval that might be required to convey the property, nor as to who was to obtain it. Nor is the record entirely clear as to what steps were taken by plaintiff or defendants to obtain the subdivision approval, but it is clear that defendants knew a subdivision was necessary before good title could be conveyed to the purchaser, and, in fact, a subdivision plan was submitted to the planning board by them or with their assent. It also seems clear that the proposed subdivision came before the board on three separate occasions, at the first of which it was not considered at all because no one appeared to make the formal presentation. On the second occasion the board refused to approve it in the form submitted; but, at the third meeting, the board finally approved it in its revised form.
Sometime after the contract was executed, plaintiff retained an engineer to prepare a subdivision map. Defendant Harry W. Trace testified that before the map was submitted he examined it, went over the information with the engineer as to the dimensions of the property to be conveyed, and then affixed his signature on the face of the map. The township planning board indicated, apparently informally, that it would not approve the proposed subdivision in the form submitted because the subject realty, including the 25-foot frontage on Oak Avenue, would have the effect of creating a small parcel isolated from the rest of the Trace property.
Mr. Trace testified that plaintiff, after learning that the subdivision had not been approved, came to his home and became "hot under the collar," accusing Trace of having "fouled up the subdivision approval." However, Trace agreed to resubmit the subdivision for approval. He testified: "I tried to please the man so that we could push it through for him, so that he could get the ground, yes, sir." A conference took place between defendants, the engineer and plaintiff at which it was agreed that the frontage on the additional piece on Oak Avenue would be increased *88 to 31.29 feet. Trace further testified that plaintiff and the surveyor came to his home and "wanted to know if they couldn't have a few more feet on Oak Avenue, of which my wife and I agreed to, so that we could have it passed for him."
The subdivision map was accordingly revised on that basis and resubmitted to the township planning board, which approved it on November 28, 1967. The map bears the following certification by Mr. Trace: "It is hereby certified that the lands subdivided by this map are owned by title of record and that consent to the approval of said map is given."
The map was then sent to the township committee, which approved it three days later, on December 1. On December 5 the township engineer affixed his certification that the subdivision complied with the applicable statutes and ordinances. The map was then sent to the county planning board for approval.
Neither party tendered performance on December 8, plaintiff's testimony being that he did not attend the closing because Mr. Trace had told him a few days earlier that he had not yet gotten clear title. According to plaintiff, the reason was that the county planning board approval had not yet been given.
Although it is not clear that county board approval was required before good title could be delivered (See N.J.S.A. 40:55-1.18 and N.J.S.A. 40:27-7), defendants also assumed that such approval was necessary. This assumption evidently originated with the title company which, having been requested by the buyer to issue a title policy, had made a report of title to him. A letter from the planning director of the county planning board (which, incidentally, did not approve the subdivision until January 18, 1968) to the title company, a copy of which was sent to the secretary of the township planning board, indicates that the map was referred to the county board before filing, for a *89 determination whether the proposed subdivision would adversely affect drainage conditions on a county highway.
Trace's explanation as to why the settlement did not take place on December 8 shows that he was under the same impression as plaintiff:
Q. Were you able to give good title on December 8th, 1967?
A. There was no place to make settlement.
Q. Were you able to convey to Mr. Salvatore good title which would remove the sub-division exception that was on the report of title?
A. I didn't care to do so.
Q. You didn't care to do so; why was that?
A. Because the agreement called for the settlement on that particular date.
Q. I am talking about that particular date, December the 8th, 1967, you were not able to give him a deed which would give him clear title and have the title company remove exception No. 8 calling for approval by the proper authorities concerning the sub-division; isn't that right?
A. Yes, sir.
Nothing further occurred until December 13 when plaintiff telephoned Trace. Trace referred him to his attorney, whom he had consulted for the first time that day. On the following day, defendants' attorney wrote plaintiff a letter purporting to confirm a telephone conversation with him earlier that day to the effect that the Traces were terminating the contract "because settlement was not made on the date called for under the terms of the agreement." A check of $25 representing return of the deposit was enclosed.
On January 4, 1968 plaintiff's attorney wrote defendants' attorney informing him that the buyer had been ready, and was ready at all times, to perform his part of the agreement, and in a separate letter of the same date, gave notice that settlement was scheduled for January 15, 1968. Defendants made no response and did not attend the closing scheduled for January 15.
The trial judge, in ruling in defendants' favor, held that the reference to the 25-foot strip in the contract rendered *90 it too indefinite to be enforceable and that the deficiency was not remedied by Trace's certification on the subdivision map that he owned the lands and consented to the map's approval. He also ruled that the buyer was not entitled to recover because he had not sought out defendants to close title on December 8, 1967, the contract having specified that time was to be of the essence.
We conclude that neither of these grounds constituted a sufficient basis for dismissal of the complaint.
The rule is well settled that specific performance will not be decreed unless the terms of the contract are expressed in such fashion that the court can determine, with reasonable certainty, the duties of each party and the conditions under which performance is due. Kirsch v. Zubalsky, 139 N.J. Eq. 22 (Ch. 1946). See Restatement, Contracts, § 370, at 673 (1932). This rule applies where the contract involves the sale of realty, in which case there must be an adequate description of the premises to be conveyed.
We agree that the contract reference to "a piece of ground of at least 25 foot frontage on Oak Avenue" lacked definiteness and standing alone could not be enforced. When the planning board informally refused to approve the map in the form first submitted because it would leave a small piece of land in isolation, the parties met the engineer and agreed to the revised 31.29 foot frontage on Oak Street required to meet planning board approval. The subdivision map was revised accordingly. The map bears, not only the signature of Trace to the certification, but also notations on it specifically designating the lands to be retained by the sellers and those to be conveyed to the purchaser-plaintiff. Trace admittedly was authorized to act for his wife in taking this action.
When Trace certified on the subdivision map that he owned the land and consented to approval of the map, any indefiniteness in the contract was eliminated by supplying a definite and precise description of the land to *91 be sold. The contract and subdivision map must be read together and so read they clearly express the intention of the parties as to the lands to be conveyed. See 4 Williston, Contracts (3 ed. 1961), § 583, at 145.
We turn now to the question whether plaintiff should be denied relief because time was made of the essence in the contract. Ordinarily, equity does not regard time as of the essence of an agreement. When a certain period of time is stipulated in the contract for its completion, or for execution of any of its terms, equity treats the provision as formal rather than essential. Delay, unless willful or unreasonably long or prejudicial to the other party, is not of itself a reason for denying the relief of specific performance. See 4 Pomeroy, Equity Jurisprudence (5 ed. 1941), § 1408, at 1054.
The parties to an agreement may properly provide, however, as they did in the present case, that the time fixed in the contract for performance shall be of the essence. Such agreement will be given effect if it clearly so provides. See Stamato v. Agamie, 24 N.J. 309, 315 (1957).
But even where the contract explicity stipulates that time shall be of the essence, the parties may nevertheless later waive that provision by their conduct. See 6 Williston, Contracts (3 ed. 1962), § 856,
Where time of performance is of the essence of the contract, a party who does any act inconsistent with the supposition that he continues to hold the other party to his part of the agreement will be taken to have waived it altogether. When a specific time is fixed for the performance of a contract and is of the essence of the contract and it is not performed by that time, but the parties proceed with the performance of it after that time, the right to suddenly insist upon a forfeiture for failure to perform within the specified time will be deemed to have been waived and the time for performance will be deemed to have been extended for a reasonable time. (at 232).
Conduct may operate as a waiver even though, as here, the subject contract involves realty, and, moreover, provides that the date fixed for the settlement could be extended *92 only "by mutual consent in writing endorsed hereon." Despite such language a non-written modification in the form of a waiver is not violative of the Statute of Frauds. See 2 Corbin, Contracts (1950), § 310,
Waiver of conditions and estoppel to assert them are subjects that are fully considered in dealing with contracts quite independently of the Statute of Frauds * * *. [T]here is nothing in the Statute of Frauds to prevent them from being fully operative in the usual way. (at 115).
Here there can be no question that defendants, by their own conduct, waived any right that they may have had to insist upon completion of the contract by the original date specified in the contract, as revealed by their own testimony and without regard to that of the plaintiff or other witnesses. Consequently, the issue upon which the case turns does not depend upon any assessment of credibility by the trial judge. Subdivision approval of the planning board and the township committee had finally been achieved after the delay necessitated by the revision of the map after the first submission. The engineer had certified that the map complied with applicable statutes and ordinances. All parties including the title company, were obviously awaiting notice of the approval of the county planning board assumed to be necessary so that they could fix the actual date for the closing. Both parties were still collaborating on the eve of that performance date in an effort to effectuate their mutual desire to consummate the sale. It was in every sense an on-going transaction. To allow defendants, under these circumstances, to terminate the contract, to plaintiff's detriment, because the settlement was not made on or before December 8, would produce an unconscionable result.
Defendant Trace conceded he was not prepared to deliver the deed on December 8 because of his inability to remove the title company exception which was thought to include county planning board approval. Since the transaction was *93 not ready to be consummated and both parties were acting on that premise, there was no reason for plaintiff to seek out defendants at their home or elsewhere in order to tender the balance of the purchase price. Indeed, both defendants admitted that they had not even made arrangements to have the deed prepared. Harry Trace's response to the inquiry as to why he had not prepared the deed is extremely significant:
I thought when the settlement was to come up, we would get the deed made up then, when the settlement was due, we thought we would get the deed then.
That response demonstrates that he expected further steps in the transaction to take place before the closing could be consummated and that he had no intention of holding plaintiff to a strict compliance with the time provision of the contract. Further, it suggests he himself was relying upon this circumstance as an excuse for not fulfilling his obligation to deliver a valid deed at that time. (On this latter point, it is worthy of note that defendant Harry Trace testified that he was dissatisfied with the contract because he thought he was selling the property at too low a price.)
The dissenting opinion of our colleague on the waiver aspect of the case merits consideration. That opinion rests heavily upon the conclusion of the trial judge that defendants were actually in a position to convey a marketable title on December 8 despite the lack of any county planning board approval at that time, and upon the assumption that the purchaser had not demonstrated a breach of contract through an avoidance or interference on the part of the sellers with the time of the essence provision.
In our view, these conclusions, if correct, had only tangential relevance to the controlling and essentially equitable issue presented. Whether or not defendants had the capability of delivering a valid title on December 8 of the kind called for by the contract, lacking as it did, county planning *94 board approval, has no bearing on this critical question. Whether the trial judge's interpretation of the applicable planning statutes on this point is correct is equally beside the point. Nor is it controlling whether or not there was an affirmative showing that defendants avoided or interfered with the December 8 closing date.
What is of vital significance in resolving the basically equitable problem is the state of mind of the contracting parties, particularly that of defendants just prior to December 8. Was it their intention at that time that the rights of the parties under the contract would terminate on the December 8 date fixed for closing, irrespective of whether the county planning board approval had not been obtained by then? On that critical date the minds of both parties were directed towards a closing date, the time of which hinged specifically upon the assumed need for such approval. There was no quarrel between them as to whether such approval was a legal requirement for the conveyance of a marketable title; the fact is that they believed it was required and acted accordingly.
Consequently, neither the correctness of that assumption nor the fact that it may have originated with the title company has any bearing on whether defendants' conduct was so inconsistent with an intention to close on the date originally specified as to preclude them from forfeiting plaintiff's rights under the contract for failure to do so. We observe that there was no other reason shown by the evidence why the parties permitted the December 8 closing date to pass, except their assumption that county planning board approval was required. There was no other unresolved title questions. There can be no doubt that the purchaser was ready and willing, indeed anxious, to bring the transaction to fruition. For this reason it is farfetched to suggest that the purchaser had some kind of an obligation to exercise his rights under the option clause of rescinding the contract or of taking less than the title bargained for as the price of keeping his rights alive. This provision *95 would have significance on the waiver issue only if it appeared that the purchaser was pursuing rights under the option provision and that the sellers so understood and acted thereon. That was not the case here.
Nor are we persuaded that equitable relief should be denied on any theory that waiver of the time of the essence provision was not previously articulated in the pleadings. The action for specific performance involved the equitable powers of the court. Defendants sought to deny the exercise of those powers by reliance on a forfeiture. The evidence relating to the time of the essence provision focused attention on the activity and conduct of the parties and implicitly involved the issue of waiver which was before the court. If it were technically necessary or desirable, the pleadings could readily be amended to conform to the evidence. In the interest of a just and fair result that issue may not be ignored.
In view of our conclusion that defendants, by their conduct, waived the right to insist upon strict enforcement of the provision making time of the essence, we deem it unnecessary to consider at length plaintiff's alternative contention that defendants were not entitled to rely on that provision because they themselves were in default under the contract. The argument advanced on this score is that defendants, in order to deliver the good and marketable title called for by the contract, were obliged to procure all necessary subdivision approvals prerequisite to delivery of such valid title, and that it was defendants' failure to obtain such approval that prevented the closing.
The title, of course, was not marketable without such subdivision approval, as the parties by their conduct recognized. See N.J.S.A. 40:55-1.23. Compare Purich v. Weininger, 72 N.J. Super. 344, 346 (App. Div. 1962). But plaintiff's right to insist that procurement of the subdivision approvals was an implicit obligation of the sellers under the contract is weakened by the fact that he engaged the engineer to prepare the subdivision map, participated *96 in the process of obtaining the necessary approvals, and assumed at least equal responsibility with defendants to this end. Under such circumstances, it seems doubtful that he, any more than defendants, may insist upon strict performance of what otherwise may have been a legal obligation of defendants.
Finally, there is no merit to defendants' suggestion that plaintiff is not entitled to relief because the contract contained a provision conferring upon the buyer, among other things, the option of taking such title as the sellers were able to give, without abatement of price. As the term "option" indicates, this provision was for the benefit of the buyer. It permitted him to waive any deficiency in the title and relieved him from the obligation of taking the title if it proved defective. It was not intended to provide the sellers with a means of avoiding performance of their obligation to convey a good and marketable title. Furthermore, it has no relevance to the issues in this case since failure to close as the parties originally planned was not due to defendants' lack of an ability ultimately to deliver good title, but rather to their inability to do so at the time originally specified.
The judgment is reversed. The matter is remanded for the entry of a judgment directing that upon plaintiff's payment of the purchase price defendants shall specifically perform the contract by delivery of a deed in accordance herewith.
KOLOVSKY, J.A.D. (dissenting):
Two reasons were given by the trial court for ruling adversely to plaintiff: (1) the indefiniteness of the contract description of the land to be conveyed because of its inclusion of "a piece of ground of at least 25 foot frontage on Oak Avenue"; and (2) plaintiff's unexcused failure to comply with the "time of the essence" provision of the contract calling for settlement on December 8, 1967.
The last mentioned provision reads:
*97 3. Settlement shall be made on or before the 8th day of December A.D. 1967, said time to be of the essence of this Agreement, unless extended by mutual consent in writing endorsed hereon.
It was on the settlement date that plaintiff was to pay $3475 of the $3500 purchase price (only $25 had been paid as a deposit under the contract) and was to receive possession. And it was on that date, too, that plaintiff was required to elect what course to pursue if the defendants were "unable to give a good and marketable title or such as [would] be insured by [a] reputable Title Insurance Company," paragraph 9 of the contract providing that in such event,
Buyer shall have the option of taking such title as the Seller can give without abatement of price, or of being repaid all monies paid on account by Buyer to Seller and the Buyer shall also be reimbursed for any Title Company charges incurred; and in the latter event there shall be no further liability or obligation by either of the parties hereunder and this agreement shall become null and void.
The majority opinion rules that neither of the reasons given by the trial court for its decision is valid. As to the first, it concludes  and I agree  that the defect resulting from the indefiniteness of the contract description was eliminated when defendant Harry W. Trace signed the certification on the subdivision map delineating the premises to be conveyed.
In treating with the second reason given by the trial court, the majority opinion acknowledges that
The parties to an agreement may properly provide, however, as they did in the present case, that the time fixed in the contract for performance shall be of the essence. Such agreement will be given effect if it clearly so provides,
but concludes that here the parties had, prior to December 8, 1967, waived by their conduct the contract provision making settlement on that day of the essence.
I find no justification in the record for that conclusion.
*98 Indeed, plaintiff does now not contend that the time of essence provision of the contract had been waived or that the parties had agreed to an extension of time for settlement beyond December 8. Waiver was not pleaded by plaintiff (see R.R. 4:8-3); it was not encompassed within the plaintiff's contentions or the issues listed in the pretrial order. Nor is waiver or an extension of time asserted or relied on in plaintiff's brief on appeal. Quite the contrary. We are told in a purported paraphrase of plaintiff's testimony  testimony which defendant Harry W. Trace flatly denied  that at a conference which took place on December 5 or 6, 1967,
Trace told [plaintiff] Mr. Salvatore that he was not ready to convey a clear title and that Salvatore would have to wait. Evidently Mr. Trace had in mind the approval of the County Planning Board which was not given until January 26th of 1968. The plaintiff did not agree to any extension of time. (Emphasis added)
The paraphrase of plaintiff's testimony does not conform to the record. That testimony and its evaluation by the trial court are discussed later in this opinion.
Plaintiff's claim rather is that his failure to tender performance on December 8 is excused because allegedly defendants were then unable to convey
to the plaintiff the land in accordance with the agreement because they had been unable to have various exceptions removed from the report of title, issued by the Commonwealth Land Title Insurance Company under Application No. N13587-S
and because, to quote the amendment to the complaint embodied in the pretrial order, defendants allegedly "refused to allow plaintiff's agents from making a survey; and attempted to block subdivision." To this plaintiff added in his trial testimony (quoted below) a claim that several days prior to December 8, 1967, defendant had requested an extension of time to clear the title and that he, plaintiff, had assented thereto. The trial judge found that defendants were able to convey good and marketable title on *99 December 8 and that the other charges made by plaintiff were not proved, the court saying,
The Court feels that the vendee failed by his proofs to demonstrate that the vendors breached the contract by avoiding or interfering with the closing set for December 8, 1967, time being of the essence.
The record furnishes full support for those findings.
The contract required that the title to the property to be conveyed
be good and marketable or such as will be insured by any reputable Title Insurance Company in the City of Philadelphia, or the adjacent counties, at the regular rates.
That municipal subdivision approval would have to be obtained was acknowledged by all the parties. Plaintiff undertook the laboring oar in seeking such approval although the application therefor was filed by defendants or in their name. Plaintiff retained an engineer and surveyor to prepare the subdivision map and to process the application. When the township planning board refused to approve the first map showing 25 feet on Oak Avenue, plaintiff and his engineer induced defendants to agree to include additional land to increase the Oak Avenue frontage to 31.29 feet.
The subdivision map, revised accordingly, was approved by the planning board on November 28, 1967. By letter of November 30, 1967, the planning board notified the Township Committee that it had reviewed the proposed subdivision, had approved it "as an exempt minor subdivision" and was favorably referring it to the Township Committee for approval. The Township Committee's resolution approving the subdivision was adopted at its meeting of December 1, 1967.
With the adoption of the last mentioned resolution, a week before the specified settlement date, defendants were able to convey good and marketable title to the subdivided tract.
*100 The resolution adopted by the Township Committee at its meeting of December 1, 1967 effectuated the required subdivision approval. N.J.S.A. 40:55-1.14, 1.17 and 1.18, L. 1953, c. 433, §§ 14, 17, 18; and see Stoker v. Irvington, 71 N.J. Super. 370, 383 (Law Div. 1961).
Nothing appears in the record to justify the alleged refusal of the title insurance company retained by plaintiff to remove from its report of title the exception requiring:
8. Municipal approval for sub-division of premises of which insured premises are a part
unless the subdivision which had already been approved by the municipal planning board and the Township Committee was also approved by the County Planning Board. By section 18 of L. 1968, c. 285, approved September 6, 1968 but not effective until July 1, 1969, N.J.S.A. 40:55-1.14 was amended to require a subdivision application to be submitted to the County Planning Board for review and approval prior to approval by the municipal approving authority; see also L. 1968, c. 285, §§ 5, 6 and 7, N.J.S.A. 40:27-6.3 to 6.5. But that amendment has no application to the present case, nor in the circumstances of the property involved in this case was such approval called for by N.J.S.A. 40:27-7 or N.J.S.A. 40:27-12. There is no indication in the record that this minor subdivision could in any way affect drainage conditions on a county highway, the only situation in which, as plaintiff's attorney conceded during the trial, a county planning board would be concerned with a proposed subdivision. Cf. N.J.S.A. 40:27-12.
Moreover, plaintiff-purchaser would be fully protected by the certificate signed by the Township Clerk pursuant to the power granted by N.J.S.A. 40:55-1.24 and endorsed on the subdivision map on December 1, 1967. The certificate reads:
*101 I certify that this map was duly approved by resolution of the Township Committee of the Township of Gloucester at a meeting held on 12-1-67 and shall be filed on or before 2-28-68. I hereby further certify that the Township Committee of the Township of Gloucester is the proper constituted authority.
By reason of N.J.S.A. 40:55-1.25, the certificate constituted an effective bar to any future action by the municipality to invalidate the conveyance or prohibit the use of the subdivided property.
The fact that the title insurance company would not approve the title is of no moment. Defendants' obligation under the contract would be satisfied by a conveyance of a good and marketable title. It was not necessary that the title also be such as would be insured by a title insurance company. The contract provision is in the alternative; title is to be "good and marketable or such as will be insured by any reputable title insurance company * * * at the regular rates." The contract does not require that the title be both marketable and such as would be insured by a title company. Cf. Mackenzie v. McLean, 20 N.J. Super. 517 (App. Div. 1952).
Further, even if the lack of County Planning Board approval were to be held to render title unmarketable, plaintiff's position would be no better. He still had to act on the date fixed for settlement; to then elect, as paragraph 9 of the contract quoted above required him to do, either to take such title as defendants could give without abatement in the purchase price or to rescind the transaction. Where time is of the essence of the contract as it is here, one seeking to enforce it either by way of specific performance or by an action for damages for breach of contract must first establish that he tendered performance at the time called for by the contract. Sonek v. Hill B. & L. Assn., 138 N.J. Eq. 534, 539 (Ch. 1946), aff'd o.b. 140 N.J. Eq. 108 (E. & A. 1947); Doctorman v. Schroeder, 92 N.J. Eq. 676 (E. & A. 1921); Collins v. Delaney Co., 71 N.J. Eq. 320 (Ch. 1906); Long v. Hartwell, adm'r of *102 Carpenter, 34 N.J.L. 116, 127-128 (Sup. Ct. 1870); McKuen v. Serody, 269 Pa. 284, 112 A. 460 (Sup. Ct. 1921).
The majority's conclusion that plaintiff is entitled to specific performance is not bottomed on any of the reasons argued by plaintiff to excuse his failure to tender performance on the date specified for settlement but rather on a factual finding which the majority makes, that the parties had by their conduct waived the time of the essence provision of the contract. As I have noted, the factual issue of whether there was such a waiver was neither pleaded nor litigated below; it was not raised by the factual contentions advanced by the respective parties. In such circumstances, I see no warrant for an appellate court to initiate such a finding on the basis of the cold record.
Moreover, as I read the record it does not establish that there had been a waiver of the time of the essence provision. The quotation from 6 Williston, Contracts (3 ed. 1962), § 856, p. 232, appearing in the majority opinion, refers to a situation where the parties, subsequent to the time fixed for performance by their conduct, recognize the contract as subsisting. But nothing that occurred in this case subsequent to December 8 constituted such a recognition.
Nor, in my opinion, does the record  in view of the trial court's findings as to credibility  establish an agreement between the parties, prior to the closing date, either express or to be inferred from their conduct, that the settlement date should be extended or that the time of the essence provision should no longer be effective.
Here the time of the essence provision is embodied in a contract drafted by plaintiff's own attorney; defendants were not represented. The provision is unusually explicit and unequivocal; the time fixed, December 8, 1967, was not only made of the essence but the parties agreed that any extension of time had to be embodied in a writing endorsed on the contract.
*103 I recognize of course that the fact that the contract calls for a writing to effectuate an extension of time of the settlement date is not a bar to the establishment of such extension or a waiver thereof by oral testimony (see Lewis et al. v. Travelers Insurance Co. et al., 51 N.J. 244, 253 (1968); Headley v. Cavileer, 82 N.J.L. 635 (E. & A. 1911); 1 Corbin, Contracts, § 31, p. 116), but the fact that the contract does so provide is "to be given some evidential weight in interpreting the subsequent expressions of the parties; it is not lightly to be discarded in determining whether the parties have later agreed to be bound without a writing," 1 Corbin, supra, at 117; and see Headley v. Cavileer, supra, at 643.
The only evidence which would justify a finding that there had been a waiver of the time of the essence provision was the testimony given by plaintiff as to an alleged conversation on December 5 or 6, 1967 between him and defendant Harry W. Trace. That testimony, if accepted as true, would have established that Trace had asked for and plaintiff had agreed to an extension of the time for settlement until title could be cleared.
Plaintiff testified on direct examination that Trace had told him on December 5 or 6,
A. That he wasn't ready yet, and he couldn't give me clear title.
Q. What did he ask you to do, if anything?
A. Nothing really, I just had to wait.
Q. Is that what he said?
A. Yes

* * * * * * * *
Q. But after he told you about this, did you agree?
A. Yes, I did.
Q. You said it was his idea to do what?
A. He needed more time to clean this thing up.
So, too, plaintiff testified on cross-examination:
Q. Was there an extension of this agreement made between you and Mr. and Mrs. Trace?

* * * * * * * *
THE WITNESS: Yes, there was.
*104 Trace flatly denied that there had been any conversation at any time regarding an extension of time.
In making his finding that plaintiff "failed by his proofs to demonstrate that the vendors breached the contract by avoiding or interfering with the closing set for December 8, 1967," the judge who heard and saw the witnesses resolved the issue of credibility against plaintiff.
I find no justification for refusing to give deference to the finding of the trial judge which was "substantially influenced by his opportunity to hear and see the witnesses and to have the `feel' of the case, which a reviewing court cannot enjoy" (State v. Johnson, 42 N.J. 146, 161 (1964)).
Finally, I find no basis for inferring an agreement to waive the time of the essence provision from the fact that the parties cooperated in obtaining subdivision approval from the municipality or from the fact  if it be a fact  that defendants knew that the title insurance company insisted on County Planning Board approval of the subdivision. There is no inconsistency between such cooperation and such knowledge and the continued effectiveness of the provisions calling for settlement on December 8, with time being of the essence.
Even if waiver were to be deemed properly an issue before us, in my opinion the time of the essence provision was not waived. It must be enforced.
It has many times been held that the court will not make a different or better contract than the parties themselves have seen fit to enter into. When a contract is clear, the court is bound to enforce the contract as it finds it. S.G. Young, Inc. v. B. & C. Distributors Co., 23 N.J. Super. 15, 26 (App. Div. 1952).
I would affirm.