In the Matter of Raymond M. MASTA-PETER, Sr., Frances S. Mastapeter, Rand Development Corp. and Riverview Estate Corp., Debtors.

Albert D'ANGELO, Plaintiff,

v.

RAND DEVELOPMENT CORP., Raymond M. Mastapeter, Sr. and Frances S. Mastapeter, Defendants.

Bankruptcy No. 84–0020.

United States Bankruptcy Court, D. New Jersey.

Dec. 9, 1985.

Kein, Pollatschek & Greenstein by Donald G. Kein, Union, N.J., for debtors.

Kleinberg, Moroney, Masterson & Schachter by Gary S. Jacobson, Millburn, N.J., for plaintiff.

D. JOSEPH DeVITO, Bankruptcy Judge.

The above captioned adversary proceeding, brought on pursuant to Bankruptcy Rule 7001, *et seq.*, was commenced by the filing of a complaint by Albert D'Angelo against the defendants, Rand Development Corp., Raymond M. Mastapeter, Sr. and Frances Mastapeter, on January 20, 1984, wherein the plaintiff seeks an order directing defendants to convey certain real property to the plaintiff under the doctrine of specific performance. For the reasons set forth below, the Court grants plaintiff's demand for specific performance and orders the defendants to convey the particular real property in accordance with the prior agreement between the parties.

Following the filing of the bankruptcy petitions—Raymond M. and Frances Mastapeter on August 17, 1982; Rand Development Corp. on September 3, 1982—plaintiff and defendants entered into a contract for the sale of certain real property located in Warren, New Jersey, which contract, dated September 21, 1982, approved by the Court on April 27, 1983, fixed the consideration at $47,500, with the closing to take place on or before November 1, 1982. The closing date was subsequently extended to September 7, 1983. Approximately one month prior to the closing date, it was established that time would be of the essence.

The closing did not take place on the arranged date due to the failure of Albert D'Angelo, the purchaser, to appear at the appointed time and place. Apparently, D'Angelo was hesitant because of a possible flooding problem affecting the property. On the following day, September 8, 1983, D'Angelo (purchaser) and Mastapeter (seller) met, at which time the seller reiterated his desire to consummate the sale to D'Angelo. The seller also advised purchaser's real estate broker of his desire to sell the property to D'Angelo on two separate occasions, October 19 and October 26, 1983. D'Angelo's broker relayed the fact of Mastapeter's continued interest in the sale to D'Angleo, as expressed in the October 26, 1983 conversation. On October 28, the sell-

er's attorney informed the purchaser that a $10,000 deposit was required. On November 16, 1983, D'Angelo complied through his attorney who, in his transmittal letter, stated that it was D'Angelo's understanding that this was all part of the existing contract. By letter dated January 5, 1984, seller's attorney returned the $10,000 deposit and, in his transmittal letter, advised D'Angelo that Mastapeter did not wish to "reaffirm that [sic] contract." Notwithstanding the purchaser's insistence that the formal contract remained valid and that he was now ready to close, sellers refused to engage in further negotiations with respect to the sale of the property. It should be noted that sellers had solicited other offers about this time, at least one of which was in an amount greatly in excess of the contract price, specifically, $90,000.

The sellers argue that the contract became null and void because of purchaser's failure to close on September 7, 1983; and, further, that the events occurring subsequent to the original closing date of September 7, 1983 constituted negotiations relative to a new offer which the sellers rejected. In response, purchaser asserts that, though it may be true he failed to comply with the time of the essence clause contained in the contract, the behavior of the sellers constituted a waiver of any objection on that point. Purchaser seeks his remedy in equity and prays that the sellers be compelled to convey the realty.

It is well settled that equity prevails in actions to enforce contracts for the sale of land. *See Dobbin v. Plager*, 92 N.J. Eq. 231, 235, 111 A. 404 (1920). Underlying the foregoing, it is the general belief that land may have a peculiar and special value to a purchaser. *See McVoy v. Baumann*, 93 N.J. Eq. 638, 643, 117 A. 725 (1922).

The controlling issue here is the time of the essence proviso and its effect. The leading case in New Jersey on this point is *Salvatore v. Trace*, 109 N.J.Super. 83, 262 A.2d 409 (App.Div.1969), *aff'd per curiam* 55 N.J. 362, 262 A.2d 385 (1970). There, the parties had contracted to convey real property as of a certain date, with a time of

the essence clause in their agreement. Due to difficulties in obtaining zoning approvals, the closing did not occur at the appointed time and place. However, the buyer, still interested in the property, contacted the seller in a further attempt to set up a new closing date, approximately five weeks beyond the original date. 109 N.J. Super. at 86–89, 262 A.2d 409. In deciding the matter, the appellate court looked to Professor Williston's renowned treatise on contracts, and concluded "conduct may operate as a waiver" where "the subject matter involves realty," even though the writing states that the time for settlement is of the essence. *Id.* at 91, 262 A.2d 409. Such a waiver "is not violative of the Statute of Frauds." *Id.* at 92, 262 A.2d 409. The Appellate Division found there was no question that the conduct of the parties acted as a waiver, and the transaction retained its vitality even after the called-for closing date. To allow the seller to terminate the contract because the stipulated closing date was not adhered to would bring about an "unconscionable result". *Id.* at 92, 262 A.2d 409. The court further stated that the state of mind of the parties was of "vital significance". *Id.* at 94, 262 A.2d 409. Clearly, said the court, the parties believed the contract would continue past the primary closing date. *Id.*

The *Salvatore* case sets the precedent in New Jersey for matters such as the one now before this Court. This Court is duty bound to apply *Salvatore* by virtue of the landmark case of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (deciding federal courts must apply the common law of the forum state in ruling upon nonfederal questions). In examining the testimony proffered to this Court, it is evident that the conduct of the parties in the instant proceeding clearly parallels the acts of the parties in *Salvatore*. In the case at hand, the plaintiff and defendants continued to perform as if the original contract remained in full force and effect, despite the lapse of the purported time of the essence closing date. Such conduct clearly acts as a waiver of the time of the essence clause, as contemplated by

the Appellate Division in *Salvatore.* With the clause thus waived, the defendants cannot now assert that the land sale contract is a nullity. Moreover, the subsequent acts of the parties were not indicative of new negotiations, but of a mere continuance of the previous agreement.

This Court, furthermore, takes note of plaintiff's second point relating to the authority vested in the defendants' attorney. However, this question need not be reached for purposes of this decision. The trial testimony evinces acts committed by the defendant Mastapeter himself which constituted a waiver of the time of the essence clause. Basing its decision on the defendant's own acts, the acts of his counsel are not pertinent.

In consideration of all of the above, the Court hereby finds the acts of the parties constituted a clear waiver of the time of the essence clause contained in the original contract, pursuant to New Jersey case law referred to above. Accordingly, the parties should be held to the performance of the previously negotiated agreement.

It is hereby ORDERED, ADJUDGED, and DECREED that the plaintiff's demand for specific performance is granted, and the defendants are to convey the property in question to the plaintiff in accordance with the contract for sale of real property entered into September 21, 1982.