No. 18,872.

JACOB A. FRUHLING, ET AL. *v.* LAURENCE E. ELLIS, ET AL.

(352 P. [2d] 656)

Decided May 23, 1960.   Rehearing denied June 13, 1960.

Messrs. MELLMAN, MELLMAN & THORN, for plaintiffs in error.

Mr. H. W. SEAMAN, Mr. CONRAD L. BALL, for defendants in error.

*In Department.*

Opinion by Mr. Justice Hall.

The parties appear here in the same order as they appeared in the trial court, and we refer to them by name or as they appeared below, as plaintiffs and defendants.

Plaintiffs instituted the action to recover a sum deposited as a down payment under a contract to purchase certain real property in Loveland, Colorado.

On August 17, 1954, the parties entered into a written contract whereby defendants agreed to sell and plaintiffs agreed to buy residential property, in said contract described as:

"Lot thirteen (13) of Hearthstone Addition to the City of Loveland, Colorado, except the west 100 feet thereof."

Included in the sale were certain items of furniture and appliances located in said residence and enumerated in the contract.

The total consideration to be paid was the sum of $33,500.00, payable $3500.00 at the time of the execution of the contract, assumption of an indebtedness secured by a first mortgage on the real property, and the balance to be paid in cash on delivery of deed and possession. It was further agreed that the deferred balance should not bear interest.

The contract further provided that:

"First parties [defendants] agree to furnish second parties [plaintiffs] with abstract of title extended to date showing good and merchantable title in the first parties." Further:

"IT IS FURTHER MUTUALLY AGREED that time shall be of the essence of this agreement and in case of the failure of second parties to make any of the payments or perform any of the covenants herein agreed to be made or performed by them, this agreement may be forfeited and terminated at the option of first parties

by giving second parties fifteen days notice in writing of their intention so to do, in which event it is agreed that all payments made hereunder shall be kept and retained by first parties as liquidated damages for the breach of this agreement by second parties; and it is agreed that said notice, if mailed by registered mail to second parties at Flagler, Colorado, shall be sufficient notice under the terms of this agreement."

The contract is silent as to when possession shall be delivered and also silent as to procedures to be followed in the event the title was found to be unmerchantable.

Prior to August 31, 1954, an abstract of title to the subject property, certified August 18, 1954, was delivered by defendants' counsel, who resided at Loveland, to plaintiffs' then counsel, to whom we will refer as "plaintiffs' counsel," who resided at Fort Collins, Colorado. Plaintiffs' counsel appeared as a witness in the trial court and does not appear as counsel in this proceeding on error.

On August 31, 1954, plaintiffs' counsel rendered to plaintiffs his title opinion wherein he pointed out that the abstract showed the property to be affected by: (1) rights of way for ditches and canals constructed by authority of the United States; (2) the plat of Hearthstone Addition shows an "easement for power line" along southerly portion of Lot 13 and said plat also shows the existence of the Little Barnes Irrigation Ditch; (3) though the plat does not clearly show it, "I am informed it was the intention of the platters to cut the corners off of Lot 13, Lot 14, Lot 12 and Lot 10 [these four lots corner on the intersection of West Eleventh Avenue and Roosevelt Avenue] * * *. Therefore, I believe Lot 13 has the Northeast corner cut off for street purposes."

In this opinion, following these objections, under the heading of CRITICISMS OF TITLE, the examiner pointed out that: (1) the streets bounding Lot 13 on the East and North are not *due* North and South or *due* East and West and therefor it would require a survey

to determine the exact location of the boundaries of the property to be conveyed; (2) that the North line of Lot 13 is the North line of the S ½ of the NE ¼ of Section 14, and it would require a survey to determine the true course of this line; (3) that the abstract shows that at one time Lulu M. Cox acquired some interest in the subject property and in subsequent transactions her name appears as Lula M. and again as Luly May.

Under the heading of RECOMMENDATIONS the title opinion ends with this paragraph:

"By reason of the foregoing, I consider that title is not marketable at the present time, to the whole of the property described."

Defendants' counsel, on being informed of the alleged title defects, did not recognize any of the matters pointed out as being infirmities of such a nature as to render the title unmerchantable and promptly so advised plaintiffs' counsel. Defendants' counsel then proceeded to contact plaintiffs' counsel in the hope of determining just what would be required to make the title acceptable to plaintiffs. Out of this contact and the discussions which followed, plaintiffs' counsel, by letter dated September 13, 1954, to defendants' counsel, pointed out the following steps necessary to be taken to render the title acceptable to plaintiffs:

1. Have an engineer conduct a survey and locate the corners and courses of the North and South Boundaries of Lot 13.

2. Have the owners of property immediately to the South of Lot 13 agree to the South boundary of Lot 13 as established by the survey.

3. Correct the West boundary of the tract to be conveyed to show either its course or make it parallel with the West boundary of Lot 13.

4. Have the abstract extended with the description thus obtained and corrected.

On receipt of this letter, defendants' counsel had two surveys made by competent engineers and took steps to

have the City of Loveland vacate the corner taken off of Lot 13 for street intersection purposes.

On November 8, 1954, counsel for the parties had a further agreement as to what would be required to complete the purchase and sale. This agreement was arrived at by means of a telephone conversation between the attorneys; at which time Mr. Fruhling was in the office of his attorney, and Laurence E. Ellis was in the office of his attorney. Plaintiffs' counsel testified that the agreement then made was with the approval of Fruhling, and Laurence E. Ellis testified that he consented to this new agreement. Both Fruhlings appeared as witnesses in their own behalf; neither took issue with the testimony of their attorney to the effect that an agreement was entered into with their full knowledge and consent, wherein:

"* * * it was agreed as to exactly what would be done to clear up the title objections, conditioned only on your [defendants' counsel] obtaining the vacation of the portion that was in the street. You were to complete the survey, you were to get the portion of the triangle that was in the street vacated, you were either to get, in other words, or to hold out $250.00 at the time of the settlement. That is, to hold that out to quiet the title as against the holder of the land immediately to the south and west of this property. At the time that was agreed on the Fruhlings were to receive rent from September 7 at $125.00, a month, credit from the Ellis's. * * *."

This was all to be done as soon as possible after the vacation of the street was accomplished.

The portion of the street involved was vacated on December 8, 1954, and on that date defendants' counsel prepared and mailed to plaintiffs' counsel a proposed closing statement in accordance with the telephone conversation of November 8, 1954. Plaintiffs' counsel promptly contacted Fruhling with reference to a date for closing.

Plaintiffs' counsel further testified that on December

14, 1954, Fruhling came to his office in Fort Collins and "advised me that he did not want to go through with the transaction and denied that he had approved the agreement which you [defendants' counsel] and I had made." Laurence Ellis also testified, and it was not denied, that Fruhling went to his office on December 14, 1954, and wanted to settle the matter by having the purchase price reduced $2000.00, which Ellis refused; whereupon Fruhling said:

"I am through arguing, I won't have anything to do with it."

Defendant's counsel was notified of this turn of events; whereupon, on December 18, 1954, he directed a letter to plaintiffs advising them of the fact that the abstract had been extended to that date and said extension showed the vacation by the City of the triangular portion of Lot 13 in question, and notified plaintiffs that said abstract was available to them and that defendants had elected to forfeit and terminate the contract of August 17, 1954, by reason of plaintiffs' failure to pay the balance on the purchase price, and notified plaintiffs that in the event of their failure to complete the purchase of the property within fifteen days, the down payment of $3500.00 would be forfeited and retained by defendants as liquidated damages, as in the contract provided.

Plaintiffs' only response to that letter was the filing, through their present counsel, of this action.

Trial was to the court without a jury and final findings and judgment were made and entered in favor of defendants. The trial court found that plaintiffs' action was essentially an action for rescission equitable in nature and that plaintiffs:

"* * * disavowed the contract while defendants were endeavoring in good faith and with reasonable diligence to meet the objections to the title pointed out by plaintiffs' attorney and to conform to his requirements.

* * *

"That there are no equities in favor of the plaintiffs

and that the equities are in favor of the defendants who have been greatly damaged by the fault of the plaintiffs."

It appears from the record that at one stage of the proceedings the trial court was persuaded that the title was not "merchantable." However, the final findings and judgment leave that problem unresolved and we find no necessity to pass on the question for the reason that the record shows, and without question, that the defendants were making timely, good faith efforts to meet the plaintiffs' requirements, though contending all along that the title was merchantable. The record shows, according to the testimony of plaintiffs' counsel and defendant Laurence Ellis, that the parties entered into a good faith agreement as to what would be required with reference to the title to render it acceptable to plaintiffs and as compliance with the contractual requirement of *merchantable title*.

All of the testimony shows that up to December 14, 1954, when plaintiffs elected not to go through with the purchase agreement, defendants had acted diligently and expeditiously to comply with plaintiffs' title requirements and had, on December 8, 1954, made full compliance with the requirements contained in the agreement of November 8, 1954.

It is a general rule that where no definite time is fixed by contract for tendering an abstract, merchantable title, curing defects, etc., the vendor shall have a reasonable time for so doing, and the fact that the contract provides that "time shall be of the essence of this agreement" adds nothing to an agreement which fixes no "time" for the doing of an act.

In 55 Am. Jur. 718, §271, Vendor and Purchaser, it is stated:

"Where no time is specified in the agreement for conveyance or for perfecting title, the vendor has a reasonable time within which to perfect title. Accordingly, where the contract contemplates that the purchaser shall

examine the title and report to the vendor defects therein which he desires removed, the vendor, in the absence of any time fixed by the agreement at which conveyance is to be made or within which the defects are to be removed, will be allowed a reasonable time to remove defects. * * *."

Plaintiffs, having announced their intention not to perform their contract under any circumstances, are in no position to complain that the title was not merchantable prior to having allowed defendants a reasonable time to make the same merchantable; such conduct on the part of the plaintiffs made it unnecessary for defendants to go through the useless process of making the title conform to the questioned opinion of their attorney when it was made manifest that plaintiffs would not accept title even though merchantable and meeting all of their requirements.

In 91 C.J.S. 1121, §161 (4), it is stated:

"As discussed infra §219, where no time for performance is fixed or where time is not of the essence of the contract, the vendor is ordinarily entitled to a reasonable time in which to perfect his title, and a delay within reasonable limits does not generally impair his rights. In such case the purchaser may not rescind before the expiration of the reasonable time allowed by law, * * *; nor may he rescind * * * before any demand for title is made, or at any time before notice of election to rescind is given, * * *."

In *White v. Evans,* 120 Colo. 200, 208 P (2d) 922, this court used the following language, which is applicable to this case:

"Generally, where time is not made the essence of a contract for the sale and purchase of real estate, the vendor has the right within a reasonable time after notice of the defect in the title to correct the same. But the vendor may be estopped from asserting this right, as where his conduct amounts to an election on his part to stand upon the title as tendered. * * *."

From the record it appears without contradiction that shortly after the contract of August 17, 1954, was executed defendants purchased a smaller home and furniture suitable therefor, and had expended considerable sums for surveys and other matters in connection with complying with plaintiffs' title requirements, so the retention by the defendants of the down payment of $3500.00 does not constitute a windfall to them and the trial court properly allowed defendants to retain the same as liquidated damages, as provided in the contract.

The findings and judgment, being well supported by the evidence and rules of law applicable thereto, is affirmed.

MR. CHIEF JUSTICE SUTTON and MR. JUSTICE DOYLE concur.