134 N.J. Super. 245 (1975)
339 A.2d 229
THOMAS F. RUANE DEVELOPMENT CORPORATION AND THOMAS F. RUANE AND ANNE C.E. RUANE, PLAINTIFFS-RESPONDENTS,
v.
ALFRED A. CULLERE, FIRMINO CULLERE, FRANK FINETTO AND RICHARD GRAZIANI, JR., PARTNERS T/A LANDMARK DEVELOPMENT COMPANY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 15, 1975.
Decided June 3, 1975.
*246 Before Judges KOLOVSKY, LYNCH and ALLCORN.
*247 Mr. John D. Horan argued the cause for appellants (Messrs. Goodman and Stoldt, attorneys).
Mr. Reginald F. Hopkinson argued the cause for respondents (Messrs. Jeffer, Walter, Tierney, DeKorte, Hopkinson & Vogel, attorneys).
The opinion of the court was delivered by KOLOVSKY, P.J.A.D.
In this action by a vendor of real property against a vendee who allegedly wrongfully refused to consummate the purchase, the trial judge found in favor of plaintiffs, awarding them damages of $20,800 and directing cancellation of a mortgage given by the individual plaintiffs to defendants to secure return of the purchasers' deposit if they should become entitled to have it returned. Defendants' counterclaim seeking return of the $17,000 deposit made by them was rejected. Defendants appealed.
When the appeal was first before us we remanded the case to the trial court for additional testimony, findings and conclusions. Docket A-304-72. After those proceedings had been concluded supplemental briefs were filed and the appeal reargued.
Many of the controlling facts are uncontradicted. Under date of June 3, 1966 plaintiff Thomas F. Ruane contracted to purchase a tract of land in Ridgewood from sellers named Howard for $125,000. The purchase was contingent upon the purchaser obtaining a zoning variance permitting use of the premises for garden apartments, which the purchaser was to apply for. $100 was deposited at the time of the execution of the contract with an additional $12,400 to be paid when the time to appeal from any variance obtained had expired. The balance of $112,500 was to be paid 60 days thereafter. Thomas F. Ruane thereafter assigned his rights under the contract to plaintiff Thomas F. Ruane Development Corporation.
More than two years later, under date of December 6, 1968, plaintiff corporation entered into a contract to sell the *248 premises to defendants, partners trading as Landmark Development Company. The contract provided that the sale was of a "package transaction," with the seller obligated "to pay for and furnish to purchaser, prior to closing, all required permits, plans [drawn with the approval of the purchaser as to design and layout], tenement house approval, and surveys, including boundary survey." Consummation of the transaction was made conditional on a number of contingencies, including the required zoning change referred to in the Howard contract and the purchaser's obtaining a mortgage commitment.
It is conceded that under the formula provided in the contract the total purchase price was $175,000. Defendants made an initial deposit of $10,000 on account and thereafter, pursuant to a modification agreement which, among other things, eliminated the mortgage contingency provision, made additional payments totalling $7,000 in January or February 1970.
Eventually Ridgewood amended its zoning ordinance to permit the property to be used for garden apartments, and the required surveys, building plans and specifications were prepared. Plaintiff served a time of the essence notice, dated May 28, 1970, fixing June 12, 1970 at 2 P.M. as the time for closing. After a question was raised as to the alleged failure of plaintiff to procure a building permit, that permit was obtained and plaintiffs, by letter dated June 22, 1970, advised defendants that
* * * all the conditions precedent contained in the contract of sale have been satisfied and that time is hereby made of the essence on July 8th at the office of * * * at two o'clock in the afternoon, The Thomas F. Ruane Development Co. Inc. or its assigns will be ready, willing and able to deliver a deed to you for the premises in question upon tendering of the unpaid balance due under the contract by cash or by certified check.
Defendants, who were unable to arrange financing, failed to appear on July 8, 1970 at the time and place for closing.
*249 Plaintiffs then instituted this action, asserting in the pretrial order entered on July 29, 1971, that as a result of defendants' default, plaintiff corporation "was compelled to sell said property for the sum of $125,000 representing a loss of bargain in the sum of $50,000 reflected in the difference of the purchase price agreed to be paid by plaintiff and the contract price to be paid by defendants to the plaintiff."
That assertion was far from candid. As defendants ascertained after the date of the original pretrial conference, the fact was that on March 12, 1970 plaintiff-corporation, in order to raise funds to make the $12,400 payment called for under the Howard contract once zoning approval had been obtained, borrowed $12,500 from one George E. Maloof, giving the lender a promissory note of $15,000, payable on June 5, 1970, secured by an assignment both of plaintiff's rights as purchaser under the Howard contract and as seller under the contract with defendants. (Mr. and Mrs. Ruane personally guaranteed repayment of the loan.) The loan agreement further provided:
In the event of a default in the payment of the said note according to its tenor, then the assignments of the contracts referred to above shall be absolute, and the [Thomas F. Ruane Development Co., Inc.] shall have no further right in said contracts, and [George Maloof] shall have the right, at his option, to consummate the said contracts.
The Maloof note was not paid on its due date, June 5, 1970. On a date not revealed by the record the Howards, who, unlike defendants, had been notified of the assignment, served a time of the essence notice on Maloof and the plaintiffs herein. Title was closed pursuant thereto. The Howards conveyed title to the property to Maloof and his brother on June 24, 1970, Maloof paying the balance of $112,500 due under the Howard contract after receiving credit for the $12,500 previously paid by the Ruane Corporation. Maloof testified that "at this time Mr. Ruane said he couldn't close and therefore I had to move in to protect Mr. Ruane and myself."
*250 Further, according to Maloof, had defendant Landmark been prepared to close on July 8, 1970, he, under an oral agreement with Ruane, would have conveyed the property to Landmark on Ruane's behalf, charging Ruane only interest and a bonus of an unspecified amount. Be that as it may, the property was never reconveyed to Ruane or his corporation and on August 5, 1970 the Maloofs sold the property as a package to a third party for $170,000.
The trial court credited Maloof's testimony. It found that plaintiff-corporation was therefore ready to close title on July 8, 1970 and that since defendants did not appear, they had breached their contract, thus entitling plaintiff to damages.
The trial judge recognized that the usual measure of damages for a purchaser's breach of a contract to purchase real property is "the difference between the contract price and the market value at the time of the breach," Oliver v. Lawson, 92 N.J. Super. 331, 335 (App. Div. 1966), certif. den. 48 N.J. 574 (1967)  which in this case would limit recovery to $5,000, the difference between the contract price of $175,000 and the market value of $170,000, the price received by Maloof on resale less than a month after July 8, 1970. Nevertheless, he concluded that in this case that "we have the usual situation where the plaintiff Ruane did not realize the eventual proceeds of the sale of the property to another party; George Maloof did. To use Oliver would be unfair and inequitable." The judge ruled, in purported reliance on Giumarra v. Harrington Heights, 33 N.J. Super. 178, 197 (App. Div. 1954), aff'd o.b. 18 N.J. 548 (1955), that plaintiff should be awarded his "anticipated profits," the difference between the price of $175,000 provided in the Landmark contract and the $125,000 provided in the Howard contract, $50,000, less (a) the expenses of $12,200 required to be incurred to provide the "package" and (b) the $17,000 deposit received by plaintiffs. Judgment was then entered for the "anticipated net profit" of $20,800.
*251 Defendants' appeal challenges the findings and rulings made both with respect to liability and damages.
We conclude, however, that there is no warrant for disturbing the trial judge's determination of the liability issue. His finding that Maloof would have taken steps necessary to insure, had defendants been ready to close title on July 8, 1970, that the property was conveyed on plaintiffs' behalf to defendants, at the contract price, finds adequate support in Maloof's testimony and therefore may not be disturbed. State v. Johnson, 42 N.J. 146, 161-162 (1964). It is of no moment  in view of Maloof's readiness to convey  that the agreement with plaintiffs providing for that conveyance was oral and would have required plaintiffs to make some additional payment to Maloof. That finding justifies the court's conclusion that plaintiff corporation was able to perform on the day set for closing.
However, the trial judge erred in its admeasurement of damages. Nothing in the circumstances of this case justified anything but the application of the normal measure of damages set forth in Oliver v. Lawson, supra  the difference between the contract price, $175,000, and the market value of the property on July 8, 1970, $170,000, less a credit for the deposits made on account of the purchase price. Sheehy v. Galipeau, 48 N.J. Super. 95, 102 (App. Div. 1957).
Giumarra v. Harrington Heights, supra, is clearly distinguishable and furnishes no support for the trial judge's conclusion. That case involved an assignment by the purchaser of his rights under a contract of purchase, following which assignment he had no power to enforce his rights against the seller. Here, however, plaintiffs' rights under the Howard contract were unaffected by the subsequent independent contract to sell the premises to defendants. Irrespective of whether defendants defaulted or not, plaintiffs were in a position to acquire the Howard property by paying the moneys due thereunder. That plaintiff corporation, because of its own financial problems, found it necessary  unknown *252 to defendants  to enter into arrangements with Maloof which resulted in its losing to Maloof the benefit of the transaction, affords no justification for deviating from the usual rule of damages. Defendants may not be charged with any responsibility by reason of plaintiff's lack of financial resources to consummate the Howard contract, any more than defendants are to be excused from their default in not consummating the purchase of the property because they were unable to arrange for the financing thereof.
Since the deposits made by defendants on account of the purchase price, $17,000, exceeds the $5,000 difference between the contract price and the market value of the property at the time of the breach, no actual damages were proven. A plaintiff who proves a breach of contract but no actual damages may not recover more than nominal damages. Ench v. Bluestein, 52 N.J. Super. 169, 173-174 (App. Div. 1958). Here, plaintiffs may not recover even nominal damages since they have already received deposits totalling $17,000 on account of the purchase price  deposits which they are entitled to retain because of defendants' breach of contract. Oliver v. Lawson, supra, 92 N.J. Super. at 333.
Because plaintiffs are entitled to retain the deposits, the trial judge properly directed the cancellation of the mortgage made by the individual plaintiffs to defendants to secure the return of the deposit made under the contract if defendants became entitled to the return thereof.
So much of the judgment appealed from as awards plaintiffs damages in the sum of $20,800 is reversed. So much of the judgment as directs that the mortgage held by the defendants be endorsed for cancellation and returned to the individual plaintiffs is affirmed.
No costs to any party on this appeal.