247 N.J. Super. 373 (1990)
589 A.2d 620
JACK KRUPNICK, PLAINTIFF-APPELLANT, CROSS-RESPONDENT,
v.
MICHAEL J. GUERRIERO, WILLIAM PENNISI, DEFENDANTS-RESPONDENTS, CROSS-APPELLANTS, AND BROKERS 3 REALTY, JERSEY SHORE REALTORS AND ESSJAY REALTY ASSOCIATES, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted November 19, 1990.
Decided December 31, 1990.
*375 Before Judges ASHBEY and LANDAU.
Abraham M. Penzer, attorney for appellant, cross-respondent (Steven L. Rothman, on the brief).
McCarthy & Schatzman, attorneys for respondents, cross-appellants, (Jill Frankel Ray, of counsel and on the brief).
Defendants Brokers 3 Realtors, Jersey Shore Realtors and Essjay Associates did not participate in the appeal.
The opinion of the court was delivered by ASHBEY, J.A.D.
Plaintiff (seller) Jack Krupnick, a real estate developer, agreed to sell a 13.40 acre parcel in Lakewood to defendants (buyers) Michael Guerriero and William Pennisi. Under the contract the seller was to obtain many governmental approvals prior to closing. The agreement also called for the buyers to make a $300,000 deposit on the $1,100,000 purchase price, which *376 was secured by a note and mortgage. There was no provision in the contract for the disposition of this sum upon the buyers' default.
When the matter did not close, plaintiff seller retained the deposit and brought an action against defendant buyers for cancellation of the mortgage. Defendant buyers counterclaimed for return of their deposit, claiming that seller had breached the contract. The trial court found that, by failing to close, the buyers breached the contract and allowed the seller to retain as damages $100,000 of the $300,000 deposit.
Plaintiff seller appeals from the denial of his demand for the full $300,000 and defendant buyers' cross-appeal from the court's conclusion that it was the buyers, rather than the seller, who breached the contract. We affirm on the cross-appeal and reverse and remand on the appeal.
We need not review all of the facts concerning time of the essence notices which persuaded the court that defendant buyers breached the contract. See Stamato v. Agamie, 24 N.J. 309, 315, 131 A.2d 745 (1957). The judge's conclusion was that a February 8, 1988 letter by defendant buyers' attorney did not effectively make time of the essence, while a March 9, 1988 letter by plaintiff seller's attorney did. That conclusion was supported by the record and must be respected. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-484, 323 A.2d 495 (1974). It being undisputed that the buyers did not appear on the March 21, 1988 return date, when the seller was present, ready, willing and able to close title, it was the buyers who breached the contract.
What remains at issue is the remedy. The seller testified to certain consequential damages: advertising expense of $2,172.25; real estate taxes of $7,785.42; engineering fees of $52,708.30; legal fees associated with contract litigation of $21,567.80; insurance of $821 and miscellaneous expenses of $2,351.42. The seller complained of some $116,000 lost interest on the $700,000 due at closing. The judge found the seller had *377 not established any actual diminution in property value and that many of the seller's expenses accrued to seller's benefit. He held that $300,000 was an excessive deposit. Having concluded that the true sales price was $1,000,000, not the $1.1 million set forth in the contract,[1] the judge ruled that 10 percent, $100,000, was a reasonable deposit to be retained, and that the remaining $200,000 was to be returned to buyers.
The main case cited by appellant is Oliver v. Lawson, 92 N.J. Super. 331, 333, 223 A.2d 355 (App.Div. 1966), certif. denied 48 N.J. 574, 227 A.2d 133 (1967), where we permitted the seller to retain $20,000 on a $215,000 contract even though the seller had sold the property at no significant loss. In Oliver we related the deposit to the seller's unquantified expenses for taxes, liability insurance premiums on vacant nonincome-producing land, costs to keep a liquor license in effect, loss of interest on the anticipated purchase price, and legal and other incidental expenses incurred as a result of the default. Id. at 336-337, 223 A.2d 355. We also noted that where the seller sought to retain the deposit and not to seek damages from a defaulting buyer, the buyers had the burden of showing unjust enrichment to prevent the retention. Subsequently, in Ruane Development Corp. v. Cullere, 134 N.J. Super. 245, 252, 339 A.2d 229 (App.Div. 1975), we held, citing Oliver, that the normal measure of damages is the difference between the contract price and the market value of the property, but where the deposit of $17,000 on a $175,000 contract price exceeded the $5,000 difference between the contract price and the price at which the property ultimately sold, the seller was permitted to retain the deposit. In Central Steel Drum Co. v. Gold Cooperage, Inc., 200 N.J. Super. 251, 262-263, 491 A.2d 49 (App.Div.), certif. denied 101 N.J. 303, 501 A.2d 960 (1985), we held that where a deposit of $50,000 on a contract to buy all of the assets of a business for $650,000 was specifically covered by a liquidated *378 damage clause, it could be retained by the seller, citing Oliver and Ruane. It was undisputed that, following the signing of the contract, there had been a great decline in the value of the business. We noted that, "an inference can be made that the [liquidated damage] clause was a reasonable attempt to estimate damages" which had been difficult to estimate. Id. at 259, 491 A.2d 49.
The most recent case concerning damages on breach of contract to sell real property is Donovan v. Bachstadt, 91 N.J. 434, 453 A.2d 160 (1982). That case involved a defaulting seller. There the Supreme Court discussed damages extensively, and held that any loss to the innocent party on breach of a real estate contract is recoverable if it should have been within the contemplation of the parties at the time of contract as a consequence of contract breach. The Court did not limit its common law references concerning breach of a real estate contract to breach by the seller, however. On the contrary, the Court placed a burden on both seller and buyer to insert provisions in land contracts to protect the rights of either. Donovan v. Bachstadt, 91 N.J. at 442, 453 A.2d 160.
In its review the Court analyzed the respective judicial remedies for all breaches of land sale contracts, including restitution, compensatory damages and specific performance. Id. at 444, 453 A.2d 160. The Court said the innocent buyers should recover
their expenditures for the survey, search, and counsel fees for services rendered in preparation of the aborted closing ... [and] the return of the deposit....
Donovan v. Bachstadt, 91 N.J. at 448, 453 A.2d 160.
The seller here took the position that New Jersey adhered to a minority view that the non-defaulting seller is entitled to keep the entire defaulting buyers' deposit, regardless of amount, without proving the seller's damage. Such an expansive holding is not compelled by Oliver.
An Annotation has surveyed the law of the states respecting the issue in this case, retention of the deposit where a buyer *379 defaults on a contract without a forfeiture clause and the seller does not establish a difference between the market and contract value of the property. Modern Status of Defaulting Vendee's Right to Recover Contractual Payments Withheld by Vendor as Forfeited, 4 A.L.R.4th 993, § 7. The Annotation divided the cases into those in which the deposit exceeded 10%, and those in which it did not. Id. at 1014-1025.
In the following cases there cited, the buyer was allowed to recover at least part of the deposit. Because of its significance, we have calculated and starred the percentage of the total contract price which the deposit represented.[2]Hook v. Bomar, 320 F.2d 536 (5th Cir.1963) (where buyer defaulted because of financial inability to conclude the purchase, held it would shock the conscience to permit the seller to hold $30,000 on a $95,000 contract ([*]31%)) id. at 1015; Nicholas v. Knowles, 87 Idaho 550, 394 P.2d 630 (1964) (retention of $6,000 on a $20,000 contract ([*]30%) was a "penalty." Seller awarded damages including loss of rental value, repairs and cleaning and a real estate commission, totalling $2,650, and balance returned to buyer); id. at 1016; Skendzel v. Marshall, 261 Ind. 226, 301 N.E.2d 641 (1973), cert. denied 415 U.S. 921, 94 S.Ct. 1421, 39 L.Ed.2d 476 (1974) (even with a liquidated damages clause, $21,000 retained was "unreasonable" on a $36,000 contract price ([*]58%)); id. at 1016; Johnson v. Carman, 572 P.2d 371 (Utah 1977) (where defaulting buyer made payments totaling $34,596 in a contract of $170,000 ([*]20%), and seller only sustained damages of $25,650, difference returned to defaulting buyer, characterizing the deposit as grossly excessive and disproportionate to any possible loss); id. at 1019.
These cases were contrasted in the Annotation with those in which the defaulting buyer had not been allowed to recover any part of the deposit. See Fruhling v. Ellis, 143 Colo. 162, 352 P.2d 656 (1960) (seller entitled to $3,500 deposit on $33,500 *380 contract, ([*]10%). Retention not a windfall); Id. at 1019; Zirinsky v. Sheehan, 413 F.2d 481 (8th Cir.1969), cert. denied 396 U.S. 1059, 90 S.Ct. 754, 24 L.Ed.2d 753 (1970) (in order for defaulting buyer to recover $500,000 deposit on contract of $2,750,000 ([*]18%), buyer must establish with a reasonable degree of certainty that deposit exceeded seller's damages. Not having done so, the buyer may not recover any of the deposit); id. at 490; Woodner v. Sankin, 188 F. Supp. 259 (D.D.C. 1960), aff'd 289 F.2d 873 (D.C. Cir.1961) (defaulting experienced business buyer unable to recover any portion of $50,000 deposit on $325,000 contract ([*]15%) where the contract contained a liquidated damages provision); id. at 261; Bando v. Cole, 197 Neb. 722, 250 N.W.2d 651 (1977) (defaulting buyer fully advised of forfeiture could not recover $12,000 deposit on $80,000 contract ([*]15%), where sellers had disposed of equipment and were prevented from finding a farm tenant during planting season); id. at 1022; Fingerhut v. Kralyn Enterprises, Inc., 71 Misc.2d 846, 337 N.Y.S.2d 394 (1971), aff'd 40 App.Div.2d 595, 335 N.Y.S.2d 926, app. denied 31 N.Y.2d 644, 339 N.Y.S.2d 1025, 291 N.E.2d 589 (1972) (buyer could not recover $225,000 deposit on $3,075,000 contract (7%), even in the absence of a liquidated damage clause); id. at 1030. No more recent cases than Oliver are cited for New Jersey, either in the original, or in the Annotation Supplement. 4 A.L.R.4th at 1025; 4 A.L.R.4th at 124 (Supp. Sept. 1990).
Our review persuades us that, contrary to the seller's view, a literal application of Oliver is not out of line with the rest of the states. As a general rule a defaulting buyer may not recover a deposit which does not materially exceed 10% without the court requiring that the seller prove damages in detail. In all likelihood this informal 10% equitable standard was the underpinning for the judge's limitation. In New Jersey, however, the non-defaulting seller may retain more than 10% to the extent that he proves damages above that amount. Here there was evidence that the seller's damages were more than the 10% allowed, although less than the 30% retained.
*381 While no correlation was made between the items of damage and the 10% permitted to be retained, there were some rulings made which may have influenced the decision and which require comment. We agree with the trial judge that litigation legal fees are not generally considered items of damage. See Donovan v. Bachstadt, supra, 91 N.J. at 448, 453 A.2d 160. Oliver's reference to legal fees, 92 N.J. Super. at 336-337, 223 A.2d 355, refers to non-litigation legal expenses, such as preparation for closing and the like.
No explicit ruling was made concerning interest on the money lost. Although the buyer contends that the interest the seller received on the deposit should be credited against the damages the seller suffered, such a credit is not required. In receiving interest on the $300,000, the seller was merely getting the benefit of the bargain. Ignored by the trial judge was the benefit of the bargain which the seller did not get, interest on $700,000 from the time title should have closed. Oliver v. Lawson, 92 N.J. Super. at 333, 223 A.2d 355.
Respecting the engineering fees, the court appeared to discount entirely those fees as damages on the ground that the seller obtained a residual benefit. No value was placed upon that residual benefit. The seller's proof of expense was not disputed. Oliver places on the defaulting buyer the burden of proving that returning a deposit to the seller represents unjust enrichment. Id. at 336, 223 A.2d 355. The non-defaulting seller seeking to recover out-of-pocket expense should not have the burden of disproving an unsupported contention that he obtained an unquantified residual benefit from such an expense.
In sum we conclude that the seller's retention equitably should include a sum sufficient to reimburse the seller for the advertising, taxes, non-litigation legal fees, miscellaneous expenses, and interest on his lost benefit of the bargain. Respecting the engineering fees, while we agree with the principle that there should be an adjustment for the value which the *382 seller involuntarily obtained to prevent a double benefit unjustly enriching the seller, the burden of establishing that value falls upon the defaulting buyers.
The matter is remanded for reconsideration of the seller's claim for damages in accordance with this opinion.
NOTES
[1] The real estate commission had been added to the sale price.
[2] The calculations are approximated to the nearest percentage point.