CECILE T. BRINN, PLAINTIFF-RESPONDENT, v. THE MENNEN COMPANY, A CORPORATION, AND THE MARY LOU CORPORATION, DEFENDANTS-APPELLANTS.

Argued May 1, 1950—Decided May 29, 1950.

*Mr. Atwood C. Wolf* argued the cause for respondent.

*Mr. James L. R. Lafferty* argued the cause for appellants (*Messrs. Lindabury, Steelman & Lafferty,* attorneys).

The opinion of the court was delivered by

CASE, J. The appeal is from a judgment of the Superior Court, Chancery Division, Essex County. The judgment "cancelled and rescinded" a contract between The Mennen Company as vendor and plaintiff's assignor as vendee for the sale of real estate; awarded $15,937.50 to the plaintiff against

the defendant The Mennen Company; ordered that in default of the payment of that judgment the plaintiff have a lien for that amount on the premises, or in lieu thereof a lien for that amount on a mortgage given on the premises by Broad and William Corporation to the defendant The Mary Lou Corporation; and dismissed a counterclaim filed by The Mary Lou Corporation.

The complaint grounded in a contract entered into on January 26, 1948, between The Mennen Company and David L. Ross, plaintiff's assignor, wherein The Mennen Company agreed to sell and convey the premises known as 869 to 873 Broad Street in the City of Newark. The contract called for a deed of bargain and sale and required the purchaser to pay a consideration of $525,000, of which $15,000 was to be paid on the execution of the contract, $65,000 on delivery of deed and $445,000 by a purchase money bond and mortgage to be prepared by the attorneys for the seller. The contract contained the following provisions:

"Conveyance of the above-described premises will be made subject to state and municipal requirements relating to lands and buildings, their construction and use, and violations thereof, if any; subject to rights of tenants, lessees or occupants; subject to facts disclosed by survey, copy of which is annexed, and to such additional facts as will be disclosed by a current survey.

\* \* \* \* \* \* \* \*

"The seller's obligation to convey pursuant hereto shall have been performed if it conveys to the purchaser a title which will be guaranteed to the purchaser by Lawyers Title Guaranty Company of New Jersey, subject only to the exceptions herein set forth.

"Immediately upon the execution and delivery hereof the seller will order from Lawyers Title Guaranty Company an examination of title to the premises herein described. In the event of the unwillingness of said Title Company to insure title to said premises subject only to the exceptions specified herein, the seller shall pay the cost of such title examination and return the deposit of $15,000 made upon execution and delivery hereof and thereupon the parties hereto shall be relieved of all further obligations to each other hereunder. In the event that said Title Company reports its willingness to guarantee the title to said premises subject only to the exceptions herein stated, the purchaser shall, if conveyance be made pursuant hereto, contemporaneously with such conveyance pay to the seller the cost of such title examination and shall pay to such Title

Company such additional charges as may be made by it for insuring title to said premises, subject only to the exceptions hereinabove specified."

The complaint charged a default against The Mennen Company in its obligation to convey and counted against it for recovery of the $15,000, deposit money (with interest) paid on execution of the agreement. It charged that The Mary Lou Corporation was the creature and nominee of The Mennen Company, that it purchased the property with knowledge of the contract, and that the judgment should run against it and be a lien upon the land and the corporate assets in the event of default in payment by The Mennen Company. Both defendants answered, and The Mary Lou Corporation counterclaimed on a loss alleged to have been caused by plaintiff's failure to take title.

Following the execution of the contract the seller ordered an examination of the title from the Lawyers Title Guaranty Company and, on or about February 1, 1948, received a preliminary report thereon. It also obtained a current survey of the premises. Both the report of title and the survey were forwarded to plaintiff's attorneys on February 18, 1948. The report enumerated nineteen or twenty items which, it stated, would, together with any other estates, liens, defects and questions which might be found in continuing the search, be excepted from the company's guarantee unless documentary evidence of their removal be submitted and found satisfactory to the company. A few, but by no means all, of the exceptions such as those relating to matters shown on the surveys were, because of the pertinent provisions of the contract, *supra,* not subject to objection by the purchaser. Later herein we say that none of the exceptions itemized in the report were removed. That statement will be understood as referring to such of the proposed exceptions as were not excused by the contract.

On August 17, 1948, a stipulation was entered into in writing fixing the closing of title for September 27, 1948, at twelve o'clock noon at the office of the attorneys for the seller, and time for the closing of the contract was expressly made of the

essence. On September 27th, in due season, plaintiff appeared at the appointed hour and place with $65,000 in cash, ready, able and willing to close the title. The purchase money mortgage had not been prepared, no title guarantee was produced and no representative of the title company was present. None of the objectionable exceptions mentioned in the preliminary report of title had been removed, nor was there documentary evidence submitted. Further stipulations were entered into in writing, extending the closing: on September 27, 1948, to October 15, 1948; on October 14, 1948, to October 28, 1948; and on October 28, 1948, to November 3, 1948. In each of those extension agreements the closing date and hour were made of the essence.

Three o'clock was the hour for the closing on November 3rd. On that date, at two o'clock in the afternoon, plaintiff and her attorneys again appeared, but no representative of the title company was present. Still the exceptions set forth in the title company's report had not been met and the attorneys for the seller had not, as was required of them in the contract of sale, drawn the purchase money bond and mortgage. At the hour of three the *status* was the same. Plaintiff then tendered cashier's checks aggregating $65,000, stated that she was ready to execute the bond and mortgage and to close the transaction in accordance with the terms of the contract. The Mennen Company produced what purported to be a deed made by The Mary Lou Corporation, a corporation of which plaintiff had never before heard. The existence of that company and the intention to pass title through it had not been disclosed either to plaintiff or to her attorneys even in the most recent stipulation of continuance or, so far as appears, to the title company. It is in proof that there had never been a resolution adopted by The Mary Lou Corporation to authorize the conveyance. Plaintiff refused to accept the deed tendered under those circumstances and demanded the return of the deposit money. Payment was not forthcoming, and consequently this suit was brought, resulting in the judgment under appeal.

██ Appellants' point one, particularizing the twentieth objection noted in the report, is that the plaintiff was not justified in refusing to perform the contract by reason of the existence of a party wall. The twentieth item of the report of title specified:—"Rights * * * in and to a party wall separating premises in question from premises adjacent on the north." ' The purport of the point is that the existence of a party wall is not an encumbrance on a title. Whether or not the existence of a party wall constitutes an encumbrance is not the question. The seller undertook that the title was such as the title company would guarantee, and the title company refused to guarantee against that item. The validity of such a stipulation is beyond dispute, and where the parties have so agreed they are bound, in the absence of fraud, of which there is no claim in this case. *Love v. Fetters,* 98 *N. J. L.* 784 (*E. & A.* 1923); *Eustace v. Metropolitan Savings Bank and Trust Company,* 115 *N. J. L.* 541 (*E. & A.* 1935).

██ ██ Appellants' point two is that "a contract for sale of real estate, subject to facts disclosed by survey annexed or to be obtained, is subject to the exception of a deed reservation of rights in a party wall when the surveys disclose the existence of a party wall." The contract, as shown above, provided: "Conveyance of the above-described premises will be made * * * subject to facts disclosed by survey, copy of which is annexed, and to such additional facts as will be disclosed by a current survey." The survey annexed to the contract contained these words about the north wall of the structure on the premises: "Old wall embedded in new wall," a statement which disclosed nothing about a party wall. The current survey varied that language thus: "Old wall, referred to in deed, embedded in present wall." Item 9(i) of the title company's exceptions was in the words just quoted and, since it was shown in the survey, could have been reserved from the guarantee of title without violating the contract; but the expression, although it states that an old wall, said to have been referred to in some unspecified deed, is incorporated in

the present wall, does not disclose, or even suggest, that either the old wall, or the newer one, or the combination of the two, is a party wall. However, the point, even if it were well made, would not dispose of the issue. The objections or exceptions raised by the title company consisted, as we have said, of about twenty mentioned items. Some of them, including the party wall, may, for the sake of the argument, be assumed to have been met, but a number of them certainly remained open. Of the latter were the disclosures in a named foreclosure proceeding, three judgments shown by the search to be open of record, the making of a search against the purchaser at the foreclosure sale, the examination of the sheriff's deed thereunder, the affixing of stamps thereon, an affidavit of title and requisite certificate and copies of resolution of corporate purchaser at the sheriff's sale, the facts as to corporate franchise taxes and unemployment taxes, and the like. Some of these deficiencies were perhaps susceptible of clarification and removal. But the fact is that the closing had been fixed for three o'clock on November 3, 1948, at the office of the attorneys for the seller. The purchaser was there at that time, made a tender of the purchase price and demanded a deed in completion of a title which would be approved by the Lawyers Title Guaranty Company. The tender was her entire duty with the exception of the execution of a purchase money mortgage which the attorneys of the seller were to, but did not, prepare. Compliance by the seller with the demand was her right, there and then. *Doctorman v. Schroeder,* 92 *N. J. Eq.* 676 (*E. & A.* 1921); *King v. Ruckman,* 20 *N. J. Eq.* 316 (*Ch.* 1869); *Vautrinot v. Booth,* 105 *N. J. Eq.* 211 (*E. & A.* 1929). *Cf. Rose v. Wisniewski,* 112 *N. J. Eq.* 364 (*E. & A.* 1932). The seller did not comply; and as it had undertaken to provide a title approved by the title company, it could not say the requirements imposed by that company were immaterial and that they related to matters which were not legal encumbrances. Illustrating the cavalier attitude of the seller toward the obligation mandatorily fixing an hour and place for closing and toward the duty to have all required

facts and proofs in the possession of the insurer to the satisfaction of the latter, the deed submitted at the closing was the deed of The Mary Lou Corporation of which the purchaser had never heard, unaccompanied by documentary evidence of the relationship between The Mennen Company and The Mary Lou Corporation, or by proof of resolutions passed by either corporation in authorization of the conveyance, and the seller had not procured or made attempt to procure the presence of a representative of the title company to be informed of or to pass upon these and other matters. The seller was neither ready nor able to perform at the required hour and so defaulted in its contractual obligation.

Appellants' third and last point is that the reference in the contract to the survey and the disclosures manifested by the survey justify an exception in the title policy without violating the contract. We have sufficiently discussed that question. While the principal objection raised by the purchaser in the intermediate negotiations with the seller was with respect to the existence of a party wall, and there was an apparent effort to buy at a less price because of that element, the purchaser at no time waived the duty of the seller to provide a title which the title company would approve and the court below came to its decision on a wider basis than the single question of party wall. The Lawyers Title Guaranty Company never reported its willingness to guarantee the title subject only to the exceptions set forth in the contract. The argument made before us by the respondent runs the full gamut of the title company report, and we think that the history of the litigation warrants such an argument.

By reason of an agreement between the parties the question of the vendee's lien has become moot and the *lis pendens* thereon has been discharged; that phase of the appeal appears to have been abandoned. Otherwise the judgment below will be affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT, WACHENFELD and BURLING—5.

*For reversal*—None.