Kenneth W. **RICHMOND** and Norman M. **Rosengarten**, Appellants,

v.

Edward P. **BIGGANS** and Kathleen B. **Biggans**.

No. 86–1682.

United States Court of Appeals, Third Circuit.

Argued May 14, 1987.

Decided June 25, 1987.

---

E. William Hevenor (argued), Philadelphia, Pa., for appellants.

Vito F. Canuso, Jr., Philadelphia, Pa., Jane R. Goldberg (argued), for appellees.

Before GIBBONS, Chief Judge, MANSMANN, Circuit Judge, and McCUNE,* District Judge.

## OPINION OF THE COURT

GIBBONS, Chief Judge:

This diversity case, tried to the court without a jury, involves a dispute over a contract for the sale of real property in Longport, New Jersey. The plaintiffs, Kenneth W. Richmond and Norman M. Rosengarten, appeal from a judgment in favor of the defendants, Edward P. Biggans and Kathleen B. Biggans. We will reverse.

The Bigganses are the sellers in a contract, dated February 8, 1985, in which they agreed to convey the property to "FRANCIS J. MORESCHI, or his nominee" for $100,000. The contract also provides that the Bigganses would pay to Rosengarten "a sales commission of Ten Thousand ($10,000) Dollars at the time of final settlement," and that the settlement would take place "on or before the 1st day of May, 1985." The contract contains no time of the essence clause. It provides:

> Each of said parcels more particularly described in Exhibit "A" must be zoned for the construction of a single-family detached dwelling as evidenced by issuance of a zoning permit by the proper municipal authority.

---

* Hon. Barron P. McCune, United States District Judge for the Western District of Pennsylvania, sitting by designation.

Each of said dwelling units must have building permits for construction on or before April 1, 1985, at the buyer's expense.

Sale of the parcels is contingent upon receipt of a valid commitment loan for construction of two single-family dwelling units at a total sum of $240,000 at prevailing rates for a term of one (1) year. Said approval must be obtained by April 1, 1985 by or for the purchaser.

The closing did not take place on May 1, 1985. On July 24, 1985 the Bigganses conveyed the property to another purchaser for $100,000.

On November 4, 1985 Richmond and Rosengarten filed this action. Richmond alleged in the complaint that he was the nominee of Moreschi, and sought benefit of the bargain damages of $90,000 measured by the profits he would have realized had he been able to build on the lots and sell them. He also sought the expenses he incurred for zoning applications, architects' fees, and construction loan commitment fees. Rosengarten claimed $10,000 in lost commission.

The Bigganses filed an answer which admitted the allegations of paragraph 6 of the complaint, in which Richmond alleged that they "entered into a written agreement of sale with plaintiff, a nominee of a third party, Francis J. Moreschi." They admitted, as well, that a copy of that agreement was attached to the complaint. The answer put in issue only Richmond's compliance with the terms of the agreement and their breach. There was no pretrial order, and this issue was joined on the basis of the complaint and answer.

At trial, the evidence suggested that when Richmond obtained a title report he became aware that the Bigganses were indebted to Industrial Valley Bank in an amount exceeding the purchase price, and that the bank held a lien on the property. Moreover it was learned that the bank was threatening foreclosure, and would not release its lien unless it received the entire purchase price. The evidence is undisputed that neither Moreschi nor Richmond obtained building permits by April 1, 1985, or applied for construction loan commitments until after May 1, 1985. There is also evidence suggesting that Richmond approached the Bigganses about a downward adjustment of the purchase price, but that this overture was rejected. Because the bank had to be satisfied before releasing its lien, Richmond and Rosengarten, who are law partners, dealt primarily with the bank's counsel. On June 27, 1985, Rosengarten forwarded to the bank's counsel a copy of a construction loan commitment, together with a request that the bank extend the agreement to July 31, 1985 because of delays in obtaining building permits. Counsel for the bank agreed to this extension, but the Bigganses were not informed of it until July 16, 1985. On that date Rosengarten sent Mr. Biggans a copy of a letter to the savings and loan association which made the construction loan commitment, scheduling the settlement for July 30, 1985. The bank's counsel confirmed his understanding that the closing was scheduled. By letter dated July 22, 1985, and hand delivered, Rosengarten wrote to counsel for the bank and to the Bigganses confirming the July 30, 1985 settlement date. About the time this letter was being delivered, the Bigganses conveyed the property to another purchaser for the same price.

At trial Richmond testified that he was Moreschi's nominee, pursuant to a written assignment. Biggans testified that he was aware at least by June 18, 1985 that Richmond was one of the purchasers, and an exhibit was introduced, prepared by Mr. Biggans, dated June 18, 1985, showing a projection of settlement proceeds and listing the purchasers as "Francis M. Moreschi and Kenneth W. Richmond." No party, at any point during the trial, moved to modify the answer which admitted that Richmond was Moreschi's nominee.

At the end of the trial the parties were afforded the opportunity to file post-trial briefs. Thereafter the trial court filed a memorandum and an order entering judgment for the Bigganses. Post-judgment motions to reopen the judgment or for a

new trial were denied. This appeal followed.

The district court rested the judgment on alternative grounds. First, the court reasoned that the judgment should be entered in the Bigganses' favor because the plaintiffs never produced at trial the written assignment of the contract from Moreschi to Richmond, and thus Richmond failed to establish his standing to sue. Second, the court concluded that the Bigganses acted reasonably in selling the property to a third party in view of the failure of the purchasers to obtain building permits or construction financing or to close by May 1, 1985.

■ The trial court's first ground of decision is legally indefensible on this record. The pleadings conclusively established that Richmond was Moreschi's nominee, because that allegation of the complaint was admitted. There is no rule of law requiring a party to a lawsuit to produce evidence of facts which are established by an opposing party's formal admission.

■ The trial court's alternative ground requires a consideration of the law of New Jersey respecting contracts for the conveyance of real property. It has long been settled that, absent exceptional circumstances, in equity time is not of the essence in a contract to convey real property. *See, e.g., Paradiso v. Mazejy,* 3 N.J. 110, 115, 69 A.2d 15, 17 (1949), (quoting *Reade v. McKenna,* 99 N.J.Eq. 764, 768, 134 A. 371, 372 (1926)), *aff'd,* 101 N.J.Eq. 304, 137 A. 918 (1927). *See generally* 3 *American Law of Property* § 11.45 (1952). If time is not of the essence under the explicit terms of the contract, however, it can be made so by later notice if such notice sets a new time which is reasonable given the circumstances of the case. *Paradiso v. Mazejy,* 3 N.J. at 115, 69 A.2d at 17. In this case the contract has no explicit provision making time of the essence, and there is no evidence that the Bigganses at any time gave notice setting a new time. Thus under the settled New Jersey equity rule, they were not free to repudiate the contract.

■ We are dealing, however, with an action at law for damages. At one time

New Jersey followed the general rule that in actions at law on contracts for the sale of land, time of performance is considered to be of the essence. *See, e.g., Earlin v. Mors,* 1 N.J. 336, 340, 63 A.2d 531, 533 (1949); *Hodes v. Dunsky,* 5 N.J.Super. 333, 337, 69 A.2d 34, 36 (1949). *See generally* 3 *American Law of Property* § 11.45 (1952). More recently, however, the Supreme Court of New Jersey, noting that this common law rule has been changed by statute in England, observed that

> it has been suggested to be probable that "the absorption of equitable principles by the law has modified the severity of this rule [for actions at law] even without the aid of statute." 3 *Williston, Contracts* (1936), § 847, p. 2376. Professor Corbin questions the accuracy of the usual statement of the common law principle. 3 *Corbin, Contracts* (1951), § 713, p. 795. *See Restatement of Contracts* (1932), § 276. Whatever should be the rule of law, a right to damages cannot exist when plaintiff's conduct is such as to foreclose relief under the liberal approach of equity.

*Stamato v. Agamie,* 24 N.J. 309, 317–18, 131 A.2d 745, 749 (1957). The *Stamato* holding has thus read into actions at law the same defenses which would be available in equity. The holding is not dispositive of the question whether, as Williston and Corbin suggest, the same time of the essence rule would apply as well. But Chief Justice Weintraub's opinion is strongly suggestive of the proposition that the Supreme Court of New Jersey would apply the equity rule in an action at law. Based on *Stamato,* we so predict.

■ Even if that prediction were in error, and the old common law rule still applied, however, on this record Richmond still would be entitled to relief. Under New Jersey law, "even where the contract explicitly stipulates that time shall be of the essence, the parties may nevertheless later waive that provision by their conduct." *Salvatore v. Trace,* 109 N.J.Super. 83, 91, 262 A.2d 409, 413 (1969) (citing 6 Williston, *Contracts* § 856 (3d ed. 1962)). If a party to the contract fails to manifest an intent to annul it by some act done or by

giving notice within a reasonable time after the breach occurs, he is presumed to have elected to consider it to be in force. *See Neustadter v. United Exposition Service Co.,* 14 N.J.Super. 484, 82 A.2d 476 (1951); *Schlegel v. Bott,* 93 N.J.Eq. 607, 117 A. 605 (1922). The evidence is undisputed that as much as six weeks after the May 1, 1985 closing date, the Bigganses' attorney assured the plaintiffs that they should continue their negotiations with the bank over satisfying the lien. As late as June 18, 1985, Mr. Biggans prepared a projection of settlement proceeds which acknowledged that the contract was still in effect. Since nothing was done within six weeks of the closing date suggesting that the Bigganses considered the contract to be no longer in effect, it is clear that as a matter of New Jersey law the closing date, even if binding in an action at law, was waived.

■ The district court appears also to have attached significance to the fact that the contract was drafted by Richmond and Rosengarten, who are attorneys, at a time when the Bigganses were not yet represented by an attorney. Assuming, without deciding, that this circumstance imposed some higher obligation on Richmond and Rosengarten, we do not see how, on the record here, such an obligation assists the Bigganses. Such an obligation could only be significant if it should have imposed on the drafters of the contract an obligation to include a time of the essence clause. There is no evidence, however, that at the time the contract was executed Richmond and Rosengarten were aware of the Bigganses' difficulties with the bank lienholder. Absent knowledge of that circumstance, or some other suggestion that a time of the essence clause was appropriate for the Bigganses' protection, there was no reason for including one. Indeed, in some circumstances such a clause might actually disadvantage a seller who, because of some technical but curable title defect, might be unable to meet the specified date. Thus we attach no significance to the fact that in drafting the agreement Richmond and Rosengarten failed to include a time of the essence clause.

The judgment against Richmond and in favor of the Bigganses, as a matter of law, cannot stand. The judgment in their favor on Rosengarten's claim for commissions specified in the contract depends upon the trial court's holding on Richmond's claim. Thus it, too, must be reversed. Since no other defenses to this action were pleaded or appeared from the evidence, judgment must be entered in favor of the plaintiffs. In Richmond's case, the amount thereof, however, should be determined in the first instance by the trial court, which made no findings as to his damages. The amount of Rosengarten's damages appears to be liquidated.

The judgment appealed from will be reversed and the case remanded to the district court for further proceedings consistent with this opinion.