877 A.2d 372 (2004)
379 N.J. Super. 277
Carol KILARJIAN and Dave de Castro, Plaintiffs,
v.
John VASTOLA and Joan Vastola, Defendants.
Superior Court of New Jersey, Chancery Division, Somerset County.
Decided December 17, 2004.
*374 Roger A. Serruto, West Orange, for plaintiffs (Serruto & Associates, attorneys).
John Vastola (pro se), for defendants.
WILLIAMS, P.J.Ch.
This matter was initially filed as an order to show cause and was converted to a motion for summary judgment requesting the court order specific performance of a contract. The basic facts are relatively uncomplicated.
On March 18, 2004 plaintiffs, Carol Kilarjian and Dave de Castro and defendants, John Vastola and Joan Vastola entered into a contract for the sale of 136 East Cliff Street, Lot 2, Block 72, Somerville, New Jersey. The closing date was scheduled for June 15, 2004. On June 14, 2004 defendants' real estate attorney wrote plaintiffs' attorney stating that defendants had elected not to proceed to convey title. On June 15, 2004, plaintiffs' real estate attorney forwarded a time of the essence letter to Defendants, setting a closing date of June 25, 2004. Defendants failed to close and are not willing to close on the property. The contract does not contain a clause for liquidated damages or other guidance in the event the seller chooses not to transfer title at the time of closing.
Plaintiffs argue that specific performance of the land sale contract is appropriate in this matter. Plaintiffs are requesting performance under the contract because the residential property has intangible value to them. Additionally, plaintiffs contend that the difference in the financing costs they incur because of the delay should be awarded as damages because the breach by defendants will result in a higher financing cost.
Pursuant to R. 4:46-2, Plaintiffs argue that summary judgment should be awarded because not only is there no genuine issue as to any material fact challenged, they are clearly undisputed. Therefore, the moving party is entitled to judgment as a matter of law. In sum, they maintain a valid real estate contract exists between plaintiffs and defendants which defendants breached by refusing to transfer title at the time of closing.
In order to establish the sellers' breach as a prelude to an action for specific performance of the contract plaintiffs sent a time of the essence letter. Hodes v. Dunsky, 5 N.J.Super. 333, 69 A.2d 34 (App.Div.1949). Obviously that letter did not prompt a closing. Plaintiffs realize that "he who seeks performance of a contract for the conveyance of land must show himself ready, desirous, prompt and eager to perform the contract on his part." Stamato v. Agamie, 24 N.J. 309, 316, 131 A.2d 745 (1957). They ardently maintain they meet the requirement.
They also argue that even if this court were to conclude that the closing date was indefinite as "on or about June 15, 2004", then four (4) months past the original date is not a reasonable time. There is no excusable reason for the defendants' breach of contract. There was no defect in the title nor has there been conveyance to another party. Therefore specific performance is appropriate and available.
Moreover, they assert they should be awarded damages incurred by the delay of defendants' performance under the contract. Where the buyer obtains specific performance, buyer may still be entitled to monetary damages due to the delay and costs associated with the seller's initial breach of contract. Id. at 447, 131 A.2d 745, Donovan v. Bachstadt, 91 N.J. 434, 447, 453 A.2d 160 (1982). Plaintiffs argue that because they incurred costs and attorney's *375 fees for this application, as well as higher financing costs for the delay in obtaining a second mortgage commitment, defendants' delay should be quantified as damages for plaintiffs.
Defendants do not dispute the validity of the contract. They advise the court that they intended to move to their dream home in Virginia. However, Mrs. Vastola's spinal muscular atrophy ("SMA") began to accelerate. In defense of their position, defendants provided a letter from Mrs. Vastola's doctor Mark J. Brown, M.D., which explained that SMA is a progressive neurological condition that causes the slow death of motor nerve cells, resulting in increasing muscle atrophy and weakness. Dr. Brown asserts that there is no cure for SMA, nor is there effective treatment. He explains that Mrs. Vastola is now profoundly disabled and requires help with all daily activities because her arms and legs are weak. Her breathing muscles are also affected. Dr. Brown expressed concern that the proposed move will precipitate respiratory failure and hasten Mrs. Vastola's demise.
Defendants contend that as a result of Joan Vastola's muscular dystrophy, they can no longer sell their house and move. Her condition has greatly deteriorated since the time they entered into the land sale contract with plaintiffs. Specifically, defendants assert that in March of 2004, when they entered into the contract, Mrs. Vastola was able to care for herself and walk with braces. However, she began getting weaker in May of that same year when her illness progressed. As time went on she fell repeatedly and subsequently required aid to tend to her daily needs. Mrs. Vastola is now confined to either a wheelchair or her bed. Her left arm is paralyzed and her right arm is extremely weak as a result of her illness. Moreover, as of June of this year, she is having difficulty breathing, with her chest muscles becoming increasingly weaker. It follows that Mrs. Vastola's physical situation has caused her to become depressed. Defendants argue that Mrs. Vastola's serious health condition, which has become increasingly worse since the time they signed the contract for the sale of the home, should excuse performance of the contract. As an aside, they argue that plaintiffs were well aware of Mrs. Vastola's deteriorating condition when they signed the contract and had ample time to find another home.
In defense of a possible award of damages, defendants contend that mortgage rates are still favorable, and if anything, they are lower than the rates to which plaintiffs were committed. Defendants also advise the court that finances are tight and they should not be responsible for an increase in mortgage rates that have not in fact risen. Accordingly, plaintiffs believe the summary judgment motion should be denied.
The summary judgment standard requires the moving party to establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. R. 4:46-2; Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 666 A.2d 146 (1995); Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 73, 75 (1954). It is then the opposing party's burden to submit proof that the facts are not as the moving party asserts. Spiotta v. Wm. H. Wilson, Inc., 72 N.J.Super. 572, 581, 179 A.2d 49 (App.Div.), certif. denied, 37 N.J. 229, 181 A.2d 12 (1962). This Court should then determine whether there is a genuine issue for trial. Id. citing Anderson v. Liberty Lobby Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
*376 This Court finds that there are no genuine issues of fact disputed in this case because the parties agree that plaintiffs entered into a contract with defendants to purchase defendants' home and defendants breached and repudiated their obligations under the contract. The facts needed to interpret the contract are not in dispute, so under ordinary circumstances the court should award summary judgment in favor of plaintiffs and require specific performance of the contract.
Although equity requires a greater degree of certainty in an action for specific performance than is necessary in an action at law for damages, reasonable certainty of the terms is sufficient. Barry M. Dechtman, Inc. v. Sidpaul Corp., 89 N.J. 547, 552, 446 A.2d 518 (1982). There is a virtual presumption, because of the uniqueness of land and the consequent inadequacy of monetary damages, that specific performance is the buyer's appropriate remedy for the vendor's breach of the contract to convey. Centex Homes Corp. v. Boag, 128 N.J.Super. 385, 389, 320 A.2d 194 (Ch.Div.1974). At bar there was reasonable certainty in terms for purchase of the land. It is well-settled that where no time is fixed for the performance of a contract, by implication a reasonable time was intended. River Development Corp. v. Liberty Corp., 45 N.J.Super. 445, 464, 133 A.2d 373 (Ch.Div.1957). This principle is applicable to contracts to purchase realty. Id. After the first time for closing failed plaintiffs made time of the essence through correspondence from their attorney. The time of closing was set for June 25, 2004. Again there was no closing and therefore plaintiffs are correct in their assertion that they may be entitled to specific performance. This remedy, however, is a discretionary one resting in equitable principles. Relief of this character rests, not upon what the court must do, but rather upon what, in view of all the circumstances, it ought to do. Page v. Martin, 46 N.J.Eq. 585, 585, 20 A. 46 (1890).
The party seeking specific performance must "stand in conscientious relation to his adversary; his conduct in the matter must have been fair, just and equitable, not sharp or aiming at unfair advantage." Stehr v. Sawyer, 40 N.J. 352, 357, 192 A.2d 569 (1963), (citing 357 Pomeroy, Equity Jurisprudence (5th ed. 1941), § 400, pp. 100-101). Plaintiffs' actions here are above reproach in this regard. They did nothing to impede the execution of the contract. However, just as a contract must be fairly procured, its enforcement must also not advance injustice or hardship. Plummer v. Keppler, 26 N.J.Eq. 481, 481 (1875). If enforcement of the contract will be attended with great hardship or manifest injustice, the court will refuse its aid. Id. The decree, if rendered, must operate without injustice or oppression either to plaintiff or to defendant. K & J Clayton Holding Corp. v. Keuffel & Esser Co., 113 N.J.Super. 50, 55, 272 A.2d 565 (1971).
The court is faced with the unusual situation of a lawsuit where both parties appear correct in their position. Plaintiffs appear to have acted totally blamelessly under the contract. The court is sympathetic to the plight of the plaintiffs who apparently had their heart set on this house and have been waiting for a closing date. Nevertheless, the court would render a heartless judgment to evict a woman whose health has deteriorated badly while the contract was pending, and wishes nothing more than to remain in her home during the most difficult days of her illness. While plaintiffs argue that assisted living or alternate living quarters may appear a logical alternative, that is not a decision for this court to make. In weighing the equities, although a difficult decision, *377 they weigh in defendants' favor. If Chancery cannot exercise discretion in this circumstance, it is a sad day.
Therefore, this court finds that defendants will suffer great hardship if the contract is enforced because Mrs. Vastola's health is rapidly deteriorating and the further physical and mental exhaustion of the move may exacerbate her condition. Although specific performance is the usual remedy for a breach of a land sale contract where both parties' conduct has been fair and just, it is not the appropriate remedy in this case. For the aforementioned reasons, this court invokes its equitable powers to relieve defendants from the terms of the contract. Defendants provided this court with significant evidence to prove that enforcement of the contract would cause injustice or oppression to them.
Since the contract was signed in March, defendant has gotten weaker and frequently falls. The court finds the factual circumstance presented by defendant compelling. She spends her time in a wheelchair when not in bed. Her left arm is completely paralyzed and her right arm is so weak that she can no longer take care of her basic daily living activities, such as dressing and bathing. Her breathing is impaired and her deterioration has caused her to become depressed. This court finds that these drastic changes to her health require relief from the obligations under the contract so that she may remain in familiar surroundings and avoid the additional stress of a move that could exacerbate her deterioration.
This court also finds that plaintiffs are entitled to reimbursement for costs associated with the breach of contract. Compensatory damages are intended to recompense the injured claimant for losses due to the breach. In other words, the innocent party should receive the benefit of the bargain. Donovan v. Bachstadt, supra, 91 N.J. at 444, 453 A.2d 160. However, a defendant is not chargeable for a loss that he did not have reason to foresee as a probable result of the breach when the contract was made. Id. The specific elements to be applied in any given case of a seller's breach of an executory agreement to sell realty may vary in order to achieve the broad purposes of reparations. Id. at 445, 453 A.2d 160. If the buyer subsequently purchased another property financed at a higher interest the rate interest differential occasioned by the seller's default might be a proper factor to consider in fixing damages. Id. at 448, 453 A.2d 160. Accordingly, this court will consider documentation of interest rates on their subsequent mortgage, as well as the out of pocket expenses in relation to this matter. Plaintiffs should submit a detailed statement outlining the out of pocket expenses and attorney's fees associated with the breach, so that this court can award costs accordingly.
Plaintiffs' motion for summary judgment is hereby denied. Plaintiffs should provide this court with an explanation of the out of pocket expenses they incurred as a result of the breach, within 30 days.